## PAN–AMERICAN PETROLEUM & TRANSPORT CO. v. UNITED STATES.

Circuit Court of Appeals, Second Circuit.
July 9, 1928.

No. 306.

**1. Collision ⊝136—Test in determining whether detention damages should be allowed for collision is whether reasonable person would have considered detention for repairs immediately necessary.**

Test for determining whether detention damages should be allowed during time of making repairs after collision is whether reasonable person would have considered collision repairs immediately necessary.

**2. Collision ⊝125—Vessel owner held not to have proved that detention damages during time of repairs were proximate result of collision.**

Vessel owner *held* not to have proved that detention damages, during time vessel was being repaired after collision, were proximate result of collision.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Pan-American Petroleum & Transport Company, as the owner of the steamship Norman Bridge, against the United States, as the owner of the steamship Rapidan. From the decree (21 F.[2d] 791), the United States appeals. Reversed.

Appeal by the respondent from a decree in the admiralty of the District Court for the Southern District of New York, holding it liable for detention damages due to a collision.

The respondent's ship, Rapidan, collided with the libelant's ship, Norman Bridge, on June 7, 1920, and for 80 per cent. of the resulting damages the respondent has stipulated that it shall be liable. The assessment of these being referred to a commissioner, all items were agreed upon except damages for detention. As to these the facts were as follows:

On September 9, 1919, the Norman Bridge had collided with another vessel and sustained damage on her starboard bow above the water line, which did not, however, affect her seaworthiness. She continued in service without repairs, and on March 27, 1920, struck her propeller against some submerged object. The injury required eventual replacement of the propeller, but this was not done at the time, and she still continued in service. On May 22, 1920, she took the ground and injured her port bilge keel. Again she deferred repairs and continued in

her business. The collision with the Rapidan inflicted the same injury to her port bow that the collision on September 9, 1919, had to her starboard. The repairs of the first three injuries are spoken of as "owner's repairs," in contrast with the last, which are called "collision repairs."

Thus she had in all suffered four separate injuries, and on July 6, 1920, was sent to dry dock, where all repairs were done at once. The collision repairs occupied 10 days, the full amount of the detention, and were not delayed by the owner's repairs. The only evidence as to the extent to which the collision repairs required her immediate lay-up was in the affidavit of the libelant's vice president, which alleged that, "although the damages sustained as a result of the collision" with the Rapidan "did not in themselves render the vessel unseaworthy, it was deemed advisable to make repairs immediately." Again: "The primary reason for sending the vessel to the repair yard upon her arrival at New York was to carry out repairs due to the collision." As to owner's repairs it was agreed that "none of the repairs not due to the collision with the Rapidan was necessary to the seaworthiness of the vessel, and had it not been for the collision with the Rapidan the other repairs would have been deferred until the regular drydocking of the vessel in October or November, 1920."

The commissioner divided the detention damages equally between the parties, but the District Court awarded 80 per cent. of them under the stipulation.

Charles H. Tuttle, U. S. Atty., of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Burlingham, Veeder, Masten & Fearey, of New York City (C. B. Manley O'Kelley and Chauncey I. Clark, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1, 2] We held in Clyde S. S. Co. v. N. Y., 20 F.(2d) 381, that, when the owner waits to make collision repairs until the yearly overhaul, no detention damage may be allowed. This is because, as the overhaul is necessary in any event, so much of the ship's time is bound to be lost, regardless of the collision. If so, the owner has lost no profits, for he could have earned nothing during the lay-up. What we added in that case, as to the rule when owner's repairs are made

at the same time as collision repairs, presupposed that the last were immediately necessary. The Bergen, 128 F. 920 (C. C. A. 2), stands only for the doctrine that in the case of necessary collision repairs the detention damage must be limited to such time as is required for them alone, an obvious conclusion.

The District Court thought that it made no difference whether the collision repairs were in fact immediately necessary, so long as the owner believed it prudent to make them at the time. We agree, provided the owner's conclusion be well founded; that is to say, the tort-feasor may not complain if, in the situation in which the collision has placed the owner, he is reasonably apprehensive as to the seaworthiness of his ship. No one is obliged to take chances in the interest of one who has wronged him. However, it seems to us equally clear that an owner may not seize the opportunity offered him by a collision to advance his periodic overhaul, and make owner's and collision repairs together, when the ship remains fit for her service as she rides. So to hold would put in his hands the option at his pleasure to throw the loss upon the tort-feasor and profit by the wrong. This is entirely plain in cases where the damage is of a trivial kind, which nobody could honestly suppose to impair the ship's capacity.

In the case at bar the stipulation is that the collision repairs were not necessary to the ship's seaworthiness, but that the owner thought it advisable to make them at once. Strictly the measure of damages in collision is the difference in value between the ship before and after the collision, but the cost of the necessary repairs and the loss of earnings while they are being made have long been regarded as its equivalent. As to the loss of earnings, it may be that the owner makes a prima facie case when he proves his actual loss by reason of the lay-up. In respect of repairs this has been held in another connection. Mayor, etc., of N. Y. v. Second Ave. R. R., 102 N. Y. 572, 577, 7 N. E. 905, 55 Am. Rep. 839; McKegney v. Illinois Surety Co., 180 App. Div. 507, 167 N. Y. S. 843. In addition, the stipulation answers the possibility that the libelant might not honestly have thought it necessary to select the season which he did; so much we may attribute to the term "advisable." Nevertheless it remains true that the lay-up was in fact unnecessary, since the ship was seaworthy as she sailed, which means that she was reasonably fit for her service.

The test in such cases is, not the judgment of the victim of the wrong, but the ob-

jective standard of a reasonable person. The Baltimore, 8 Wall. 377, 385, 388, 19 L. Ed. 463. Conceivably it may be possible that a reasonable owner might think that a seaworthy ship should be laid up for repairs before the season for her overhaul, but the presumption appears to us otherwise. The eventual burden of proof rests upon the owner, and, although his selection of the season may possibly make a prima facie case, it is answered by her actual seaworthiness, which, unexplained, condemns his judgment. He must go further, and show that it did not, and this he has not done.

So we think that the libelant has failed to prove that the detention damages were the proximate result of the collision, and it becomes unnecessary to decide whether it made a difference that owner's repairs went along at the same time. However, since the result depends upon a nice regard to the terms of the stipulation, probably drawn without the distinction precisely in mind, we will remit the cause to the District Court, with leave, if so advised, to relieve the libelant from it. Upon that question we wish, however, expressly to say that we do not indicate any opinion one way or the other.

Decree reversed.