**Edward H. TEMPEST, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 12630.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 1, 1968.

Decided Dec. 4, 1968.

Robert M. Hughes, III, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief) for appellant.

Morton H. Clark, Norfolk, Va. (Vandeventer, Black Meredith & Martin, Norfolk, Va., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Circuit Judge and McMILLAN, District Judge.

HAYNSWORTH, Chief Judge:

In this case, arising out of a collision between two small yachts, the United States, confessing the obvious fault of

the Devil Dog, appeals from that part of the judgment which exonerated the Tempest II. The contention is that Tempest II was proceeding in violation of the Narrow Channel Rule,[1] and, on that account, the *Pennsylvania Rule*[2] requires that Tempest II bear one-half the damages. We affirm, for if the Narrow Channel Rule is applicable, the *Pennsylvania Rule* is satisfied.

The collision occurred beneath Lesner Bridge which crosses Lynnhaven Inlet in Virginia. The roadway portion of the bridge is supported by three concrete pillars providing a vertical clearance of 35 feet. The marked channel is in the western draw of the bridge, that is, between the westernmost and the center bridge supporting columns. The Coast Guard chart shows depths from four to eighteen feet in the marked channel, but it does not show depths outside that channel. Vessels entering and leaving Lynnhaven Bay regularly use the marked channel passing through the western draw of the Lesner Bridge.

On the morning of the collision, the Devil Dog, a 28 foot motor vessel owned by a non-appropriated fund facility of the Marine Corps,[3] was proceeding seaward through Lynnhaven Inlet followed by Tempest II, a 29 foot privately owned yacht. A dredge was anchored north of the westernmost concrete bridge piling, and a pipeline had been run from the dredge southerly beneath the bridge but close to the westernmost piling. There remained room for small vessels to pass beneath the bridge in the marked channel. Devil Dog undertook to do so, but somehow collided with some of the dredge's equipment and lost its steering. Instead of anchoring or stopping off its engine, it proceeded on a circle to starboard.

Meanwhile, Tempest II, approaching the bridge, observed the dredge and its equipment. She made a circular turn to port while her skipper considered what to do. He decided to attempt to pass through the eastern draw of the bridge outside of the marked channel. Because he was uncertain of the depth of the water in the eastern draw, however, he proceeded quite slowly and close by the eastern side of the center bridge piling. It was while Tempest II was undertaking to negotiate that passage that Devil Dog, with its steering trouble, bore down on Temptest II at an approximately 45° angle from the northeast. Devil Dog apparently was attempting to return to Lynnhaven Bay through the eastern draw of the bridge. Immediately before the collision, Devil Dog's skipper succeeded in bringing her somewhat to port so that at the moment of impact she was close to a reciprocal course to that of Tempest II.

The fault of Devil Dog was both obvious and flagrant. The fault of Tempest II is said to exist because she was proceeding on the left side of the eastern draw of the bridge. The claim of the United States is that the Narrow Channel Rule requires each draw of the bridge to be treated as a separate channel and required Tempest II to be on the right hand side of that "channel" if she was going to undertake to pass through the eastern draw of the bridge.

The theory is met with many difficulties, not the least of which is the fact that the marked channel was the only real channel through the inlet and the waters beneath the eastern draw of the bridge were outside of that channel and unmarked on the charts. Indeed, there is no showing that there was enough water on the eastern side of the eastern draw of the bridge to permit the safe passage of small vessels of the size of Devil Dog and Tempest II. The decided cases furnish little guidance.[4]

---

1. Article 25 of the Inland Rules of Navigation, 33 U.S.C.A. § 210.

2. The Pennsylvania, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148.

3. The United States concedes that the Devil Dog was a public vessel for whose fault the United States was responsible.

4. See the discussion of the District Court. Tempest v. United States, E.D.Va., 277 F.Supp. 59, 63.

We need not decide that question, however, for even if Tempest II may be said to have been at fault in being on the left side of the eastern draw of the bridge, that circumstance played an entirely passive part in the collision. If she was where she had no right to be, she was still absolutely entitled not to be deliberately run down by Devil Dog. Devil Dog's conduct here was more reckless than deliberate, but the position of Tempest II misled Devil Dog in no way. It had no influence upon Devil Dog's maneuverings except perhaps just before the moment of impact when Devil Dog would have been close to a collision with the bridge abutment if it had not first struck Tempest II. There was no reliance by Devil Dog upon Tempest II's compliance with the supposed requirements of the Narrow Channel Rule. The sole active cause of the collision was Devil Dog's foolhardiness in failing to stop off her engine and anchoring until the defective steering could be repaired and in continuing a substantially uncontrolled maneuver with her damaged steering.

■■ The *Pennsylvania Rule* places upon a vessel shown to have been at fault the burden of showing that her fault could not have played any part in bringing about the collision. When such a vessel shows, however, that her fault was no more than a passive condition in the sense that otherwise she would not have been where she was and that her fault made no other contribution to the collision, the *Pennsylvania Rule* does not require that she bear all or a part of the damages. The Bellhaven, 2 Cir., 72 F.2d 206; Socony-Vacuum Oil Co. v. Smith, 5 Cir., 179 F.2d 672. In each of those cases the accused vessel was on the left side of a narrow channel, but its fault did not otherwise contribute to the collision and it was exonerated. We think Tempest II was properly exonerated here, too, and that all of the damages were properly laid on Devil Dog and the United States, which is responsible for her.

Affirmed.