Pedro Labiosa ROSADO, Rafael Santiago
Salgado and Carlos Rosario,
Plaintiffs,

v.

PILOT BOAT NO. 1; San Juan Harbor
Pilots, Inc.; and Gerardo Acevedo,
Defendants.

Civ. No. 778–68.

United States District Court
D. Puerto Rico.

Oct. 1, 1969.

Nachman, Feldstein, Lafitte & Smith, San Juan, P. R., for plaintiffs.

Pieras & Torruellas, Hato Rey, P. R., for defendants.

## MEMORANDUM OPINION FINDINGS OF FACT AND CONCLUSIONS OF LAW

FERNANDEZ-BADILLO, District Judge.

This suit is the result of a collision between the F/V Corsario and Pilot Boat No. 1, which occurred in the harbor of San Juan, Puerto Rico, in the early evening of November 18, 1968. The owners of the Corsario brought an action *in rem* against Pilot Boat No. 1 and *in personam* against its owners, San Juan Harbor Pilots, Inc. and its operator, Gerardo Acevedo. The defendants answered the complaint and together therewith filed a counterclaim. The actions were set for trial on the 18th of February, at which time, pursuant to stipulation of the parties, the Court heard testimony and received evidence solely on the issue of fault.

The testimony of the parties and witnesses was heard and exhibits, pleadings, Puerto Rican and United States Statutes and Regulations and the proposed findings of fact and conclusions of law submitted by counsel were examined. From these, the Court finds that the following issues of fact require adjudication: whether the Corsario was anchored in a prohibited area of the harbor or was in any way obstructing navigation; whether the Corsario was displaying proper anchor lights; whether Pilot Boat No. 1 maintained a proper lookout prior to the collision; whether Pilot Boat No. 1 was unseaworthy or was being improperly navigated within the harbor of San Juan; and whether the above, or any of them, individually or combined, was or were the proximate cause of the collision. As a subsidiary issue is the question of whether Pilot Boat No. 1 failed to stand by and render assistance to the Corsario, after the collision.

With a view towards reaching those issues, the Court will now consider and resolve the conflicts of testimony.

## FINDINGS OF FACT

1. On November 18, 1968, at approximately 7:30 P.M., the F/V Corsario was anchored in 18 feet of water, off the west end of Isla Grande Airport. According to the testimony of the plaintiffs and of pilot Juan Luis Alicea, a passenger on board Pilot Boat No. 1 at the time of the collision, the place of anchorage was estimated to be somewhere between 150 to 300 feet from the west shore of Isla Grande Airport, at a point close to the Police Department hangar and some distance to the south of an existing navigation beacon. The plaintiffs had anchored with the bow headed into the wind, which at the time was blowing from the east.

2. At about the same time, pilots Bolivar Maldonado and Juan Luis Alicea had boarded Pilot Boat No. 1, which was being operated by Gerardo Acevedo. Both, Alicea and Maldonado, are licensed harbor pilots and were enroute to render pilot service to a vessel scheduled to leave from Pier 13 on the San Antonio channel. As they left the Pilot Station which lies on the south shore of Isla Grande, they proceeded west until they reached the southwestern tip of Isla Grande, at which point they changed to a north course along the west shore of Isla Grande. This course took Pilot Boat No. 1 directly amidship the Starboard (Right) side of the anchored Corsario.

3. The Corsario is a 23 feet long-6 feet wide, open motorboat, with a 65 horsepower engine   It has a mast and is capable of being operated by sail. At

the time of the accident, its wooden hull above the waterline was painted white, with a blue line at the deckline.

Pilot Boat No. 1 was a wooden hull vessel, over 30 feet in length, with an enclosed cabin, from where it is operated. The rear of the cabin is where the pilots sit while en route to service a vessel. In front of the cabin, on deck, is a 3 feet high shield, used by the pilots prior to boarding a vessel when in the open sea. This vessel, at the time of colliding with the Corsario, was cruising at a speed of 5 to 6 knots.

4. At the time of the collision, the weather was clear with a slight wind blowing out of the east. Although dark, visibility was excellent and the city lights surrounding the area could be seen burning brightly. Inland from the shoreline near where the Corsario anchored, several bright lampposts illuminated the small aircraft parking area. To the south of the Carsario, at a distance of approximately 300 feet, was a lighted beacon marking the northwestern tip of Isla Grande.

5. In determining the issues and ruling on the liability of this case, we must begin with a presumption that when a moving ship collides with a vessel at anchor, there is not only a presumption in favor of the anchored vessel, but a presumption of fault on the part of the moving vessel which shifts the burden of proof. The Oregon (1895) 158 U.S. 186, 15 S.Ct. 804, 39 L. Ed. 943; The Louisiana, (1866) 3 Wall. 164, 70 U.S. 164, 18 L.Ed. 85; The Victor, 153 F.2d 200 (5 Cir.1946); Placid Oil Co. v. S. S. Willowpool, 214 F.Supp. 449, 451 (E.D.Tex.1963); Continental Oil Co. v. M. S. Glenville, 210 F.Supp. 865, 867 (S.D.Tex.1962). Therefore, in order to absolve herself from liability, Pilot Boat No. 1 must show that she was without fault or that the collision was occasioned by fault on the part of the Corsario, or was the result of an inevitable accident. At the outset, it then becomes necessary to ascertain whether the Corsario incurred in fault which in any way contributed to or was the proximate or sole cause of the collision.

6. The Court finds that the Corsario was not anchored in a prohibited area nor was it obstructing navigation. The plaintiff, Labiosa, and pilot Alicea marked the approximate points of anchorage on the chart of San Juan harbor, defendant's Exhibit "A", which according to said chart was at a considerable distance east of the main channel leading into San Antonio channel. However, Alicea testified that although not anchored in the channel, the only permissible anchoring areas in the harbor of San Juan, were those designated as such in the chart, and at no other place. The harbor has three anchoring areas marked as "D", "E" and "F" on said chart. On cross-examination, he admitted the existence of sufficient passageway to navigate around the Corsario. He could not tell the Court the specific regulation which he claimed prohibited anchoring in that place. Counsel for defendant later advised the Court that the regulation was contained in 33 C.F.R. 110.240. This is the first issue that must be decided.

In reviewing Section 110.240, the Court finds that it is a regulation designating the three anchorage areas, "D", "E" and "F" in the harbor of San Juan. However, Section 110.240 does not prohibit anchoring outside of those areas. The Court has read the entire text of Subchapter 1, which relates to "Anchorages", and finds that the only restrictions against anchoring in the harbor are found in Sections 207.810(d) and 207.812(a) and (b) of 33 C.F.R. The first prohibits vessel from anchoring "in such a manner as to obstruct the channel for passing vessels" and the second establishes the seaplane landing areas, and prohibits vessels from lying to, anchoring or otherwise obstructing the area. The Court finds that the Corsario was anchored at a considerable distance to the east of the channel and was nowhere near the designated seaplane landing areas, as was shown in the chart, defendant's Exhibit "A".

It is also clear that it was not anchored within any of the designated anchoring areas. However, according to Section 109.10, concerning special anchoring areas in general, vessels not exceeding 65 feet in length are not required to show anchor lights as the anchorages are well removed from the fairways and located where general navigation will not be endangered by unlighted vessels. The Court believes that the purpose of the regulation in establishing anchorage areas is to enable vessels to safely take refuge in these areas, where other rules, such as those relating to lights, do not have to be observed.

The Court has reviewed the applicable United States Statutes and Regulations, and finds that anchoring is prohibited only in navigable channels, 33 U.S.C.A. § 409 and in the restricted areas, such as the channels, 33 C.F.R. 207.810(d) and the seaplane landing areas, 33 C.F.R. 207.12(a) and (b). The question for decision is then whether the action of the Corsario in anchoring at the point of collision was unlawful. In the absence of regulatory prohibition or a finding that as a matter of fact, the anchored vessel was obstructing navigation, it cannot be held that anchoring at the point of collision constitutes fault.

On this first issue, the Court finds the Corsario free from fault.

7. The Court also finds that the Corsario exhibited the prescribed anchor lights and running lights. A vessel of that size, when at anchor, is required to carry forward where it can best be seen a lantern that shows a clear light for a distance of two miles around the horizon. 33 U.S.C.A. § 180; 23 R. and R.P.R. 451a71(5). The Court finds that prior to the collision, the Corsario exhibited a bright gas lantern on the mainstay at a height of 8 feet. This light alone satisfied the statutory requirements. However, at the same time, the Corsario also displayed running lights. 33 U.S.C.A. § 173; 23 L.P.R.A. 451c and 23 R. and R.P.R. 451a71. It did not show fishing lights (a red light 6 feet

above white light), 33 U.S.C.A. § 178. Despite the Corsario's irregular lights, the Court finds that the excessive and improper display of lights could in no way whatsoever have contributed to the collision, as the lights were never seen by Gerardo Acevedo, the operator of Pilot Boat No. 1. If, according to his testimony, he didn't see the lights, then he could not possibly have been confused by such improper display.

Here is a situation where the display of proper lights could not have prevented the accident. A causal connection between the display of irregular lights and the collision must be shown by defendants. On the other hand, the Corsario has overcome the adverse presumption that irregular but visible lights could have contributed to the collision. Tempest v. United States, 404 F.2d 870, 872 (4 Cir.1968). The omission of proper lights will be disregarded as an element of fault where their display quite obviously could not have prevented the accident. Diamond State Telephone Co. v. Atlantic Refining Co., 104 F.Supp. 753, 755 (E.D.Pa. 1953); The Redwood, 81 F.2d 680, 686 (9 Cir.1936); Socony-Vacuum Oil Co. v. Smith, 179 F.2d 672, 675 (5 Cir.1950).

Although not alleged as an affirmative defense, Acevedo's testimony and of pilots Alicea and Maldonado, was to the effect that the Corsario had no lights at all. This testimony attempts to contradict that of plaintiffs, who testified that the Corsario had the running lights and the anchor light prior to the collision. These lights were observed by a fisherman on shore, Ismael Machuca, who also testified having seen a spotlight being beamed and flashed in the direction of Cataño, from where Pilot Boat No. 1 approached. Police Sergeant, Manuel Figueroa, on duty at the hangar at the time of the collision, testified that after the collision, he saw a white lantern on the Corsario's mainstay.

This conflict in the testimony must be resolved in favor of the plaintiffs. "Affirmative testimony that lights were displayed is given greater

weight than negative testimony that they were not." Sun Oil Co. v. S. S. Georgel, 245 F.Supp. 537, 546 (S.D.N.Y. 1965). A finding that a vessel had no lights or was obscure will not be made on mere conjecture, The Thingvalla, 48 F. 764 (2 Cir.1891); The Richmond, 114 F. 208 (E.D.Va.1902); The Hampton Roads, 1926 A.M.C. 1510.

The anchored vessel has sustained the burden of showing that it had lights and the display of improper lights did not contribute to the collision; consequently, the Court absolves the Corsario from fault.

8. The Court finds that Pilot Boat No. 1 had no lookout, or an improper lookout, and that it was being operated in a negligent manner. The testimony of Pedro Labiosa shows that while fishing, he was warned by Rafael Santiago of a vessel approaching in their direction. Since the lights were on, he didn't pay much attention, believing that the approaching vessel had seen the Corsario and would change course. When warned a second time by Santiago, he realized the existence of a dangerous situation and immediately beamed a spotlight on the incoming vessel. At the same time, the plaintiffs and the other person on board the Corsario began screaming and shouting, trying to get the attention of the occupants in the other vessel. Neither Labiosa nor Santiago saw anyone on the deck or bow of the Pilot Boat No. 1.

This shouting was heard by Gerardo Acevedo, the operator, some two minutes prior to the collision, and by pilots Maldonado and Alicea. They were also heard by Police Sergeant Manuel Figueroa some 30 seconds prior to hearing the collision noise. Gerardo Acevedo testified that upon hearing the voices, he looked around, saw nothing and figured that they probably came from shore. Despite the fact that he first heard the Corsario's occupant, some two minutes before the collision and was traveling at a "slow speed" of approximately five knots, he didn't stop the boat until he saw a "white phantom" crossing his bow. Then it was too late. The Court finds that under these circumstances, Gerardo Acevedo was negligent in not bringing his vessel to a complete stop at the moment when he first heard the shouting. According to the testimony of both pilots, the Pilot Boat, at the speed of six knots, can stop within a distance of 25 feet. If their calculations are correct, then there was sufficient time and space to stop the Pilot Boat before colliding with the Corsario.

The Court finds it was negligence not to stop immediately upon hearing the shouting, especially in view of the fact that, as testified by pilot Alicea, he knew that fishermen regularly anchored in that area at night.

The testimony of Labiosa and Santiago indicates that the Pilot Boat did not stop until some moments after the collision and the Corsario had been dragged by the Pilot Boat some 15 feet. The impact was forceful enough to throw Labiosa, who was trying to brace himself to avoid the blow, against the mast; to cause Santiago and the other occupant to fall overboard; and to completely tear open the side of the Corsario, as shown by the photographs admitted in evidence. Plaintiffs' Exhibits 4 and 4(a).

9. The Court further finds that Pilot Boat No. 1 neglected to keep a proper lookout as required by 33 U.S.C. A. § 221. The lookout is the person who is specially charged with the duty of observing lights, sounds, echoes, or any obstruction to navigation. A lookout is especially required when running in a dark night. Sun Oil Co. v. S. S. Georgel, supra, 245 F.Supp. at p. 545. The lookout should be attentive to whistles, noises and shouts as well as to lights. By the overwhelming weight of authority, it is settled that the proper place for a lookout is under ordinary circumstances on the bow. The Manchioneal, 243 F. 801, 805 (2 Cir. 1917). Although on a vessel, the size of Pilot Boat No. 1, a bow lookout may be unnecessary, there nevertheless must be someone looking

for what may be ahead. An insufficient lookout is equivalent to none. United States v. Dump Scows Nos. 116, 120, and 122, 175 F.2d 566 (3 Cir. 1949). Despite Acevedo's testimony that he was keeping a lookout from inside the cabin, but that he saw nothing until the "white phantom" crossed his bow at the moment of collision, leads this Court to conclude that such lookout was not efficient and effective. "Where there is nothing to interfere with vision, the fact that the other vessel is not seen, is all that is necessary to impute negligence to the lookout." Sun Oil Co. v. S. S. Georgel, supra 245 F.Supp. at p. 545; The Pavonia, 26 F. 106 (S.D.N.Y.1885).

▮ The lack of a proper lookout on the Pilot Boat No. 1 was the sole cause of the collision. There was little, if anything, that the Corsario could do since the operator of Pilot Boat No. 1 either was not looking towards the Corsario or did not see it and paid no attention to the danger signals, and instead continued on a collision course.

▮ 10. The Court also finds that after the collision, those on board the Pilot Boat No. 1 did not abandon the Corsario or refused to take her in tow when requested by the plaintiffs. The testimony of the parties is conflictive but it appears that the plaintiffs, which had been thrown overboard were able to get back on board the Corsario, Labiosa was able to start the vessel's motor and he succeeded in moving it towards the shore before it sank in shallow water. From the evidence on records, the Court is unable to find that Pilot Boat No. 1 failed to "Stand By" as required by 33 U.S.C.A. 367 and 23 L.P.R.A. 451i.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter.

2. The Corsario was anchored outside the channel at the time of the collision and was displaying anchor and running lights.

3. Since the Pilot Boat No. 1 collided with the Corsario, a well lighted anchored vessel, there is a presumption that the collision resulted from the negligence of the Pilot Boat.

4. Since Pilot Boat No. 1 had an improper lookout in violation of Article 29 of the Inland Rules of the Road, 33 U.S. C.A. § 221, and was being operated in a negligent manner in violation of the Motorboat Act of 1940, 46 U.S.C.A. § 526l, and of the Puerto Rico Motorboat Act of 1965, 23 L.P.R.A. 451h; it was in statutory fault requiring it to prove on this trial that such statutory fault not only did not cause or contribute to the collision, but that it could not have done so.

5. Pilot Boat No. 1 has failed to sustain its burden of proof and is therefore solely at fault for the reasons hereinbefore stated (see Findings of Fact No. 8 and 9) for the collision of November 18, 1968, between Pilot Boat No. 1 and the Corsario.

6. The Corsario has shown that there was no negligence on her part which in any way caused the collision. The Corsario's excessive display of lights could not have been a cause of the collision.

▮ 7. The claim for "punitive" damages is denied for the reasons hereinbefore stated (see Finding of Fact No. 10).

8. Accordingly, the plaintiffs are entitled to an interlocutory decree and defendant's counterclaim is hereby dismissed with costs.

9. The Clerk will set the case for hearing, at which time a final decree for damages will be entered.