Latham B. **HEWLETT**, Appellant,

v.

**BARGE BERTIE**, in rem, **TUG EVELYN**, her engines, etc., in rem, and **C. G. Willis Co., Inc.**, in personam, Appellee.

No. 12671.

United States Court of Appeals Fourth Circuit.

Argued Dec. 3, 1968.

Decided Nov. 28, 1969.

Haynsworth, Chief Judge, dissented.

Morris H. Fine, Norfolk, Va., (Fine, Fine, Legum & Fine, Norfolk, Va., on brief), for appellant.

R. M. Hughes, III, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

Computation of pecuniary damages recoverable for a ship's injury in a maritime collision centers this cause. The minim of the injury here, however, obscures and tempts neglect of the importance of the issue.

Without dispute, the facts are that barge BA–1401, afloat and made fast alongside a pier in the Elizabeth River at South Norfolk, Virginia, on September 28, 1960 was struck by another barge then in tow of tug Evelyn. The offending towboat and tow were libeled by Latham B. Hewlett, owner of the BA–1401, for reimbursement of the injuries alleged to have been sustained by his barge. As claimant of the attached or arrested accused vessels, C. G. Willis Co., Inc., answered.

Waiving the traverse in the answer, the respondents confessed negligence at trial and relied exclusively on absence of injury. The admiralty court only allowed the libelant "the sum of $1.00 by way of nominal damages" with costs. He appeals.

The basis of the decision was that as the BA–1401 had been declared a constructive loss two years before, the District Court was of the opinion that a subsequent injury could not sustain a claim. The declaration followed upon her misfortune on November 11, 1958, when she foundered in Chesapeake Bay near the mouth of the Potomac River. See Hampton Roads Carriers, Inc. v. Allied Chemical Corp., 329 F.2d 387 (4 Cir. 1964). Raised and refloated by the present libelant as contractor-salvor in June 1959, the repair and recovery cost of the barge was estimated to exceed both her 1958 purchase price of $40,-000.00 and current insurance of $45,-000.00. In these circumstances she was released to Hewlett in satisfaction of his claim for services. After $1305.76 was expended upon her in temporary repairs, such as leak stoppages, she was brought to Norfolk.

The barge was used or useable for carrying pilings or logs—weather-proof cargo. She was engaged on one occasion as a pontoon or caisson in lifting a steamer from the river bottom. In this task the barge was allowed to fill, settle beside the sunken ship and then attached to her. When pumped out, the barge's buoyancy brought the steamer to the surface.

Admittedly, the barge had no market value as an instrument of navigation and could be sold only for scrap. The skin of the barge was not pierced in the collision, and the only mark of impact was a dent in her starboard side. It produced no harmful effect upon the barge's seaworthiness or carrying capacity.

■■ Our concern is the acceptance by the instance court of the respondent's defense to the damage claim, i. e. "the barge was a constructive total loss and that no real or actual damages have been shown, thus restricting the recovery to nominal damages". The decree on review purports to fix "nominal damages", but this is in reality a dismissal of the libel, for admiralty does not recognize nominal damages. Herbst v. The Asiatic Prince, 97 F. 343, 345 (SDNY 1899, opinion by Judge Addison Brown). Presently, the Court stated, "We find no precedent for allowing damages where a vessel, deemed a constructive total loss, suffers still further damage." Apparently, the award of $1.00 was the product of this proposition. It is, we think, an untenable postulate; if accepted, it could result in unjust deprivations.

Actually, the case does not commence with the barge as a constructive loss, as the admiralty judge believed. True, that was her status more than a year previous, but only as between the owner and the salvor. Even this, however, was

not a decree of outlawry. She was not a derelict, to be jostled about with impunity. Indeed, as a sheer-hulk she had a demonstrated utility for the libelant. Slightly more than a year previous, to repeat, $1305.76 had been expended in restoration. The accused tugboat and tow cannot escape liability by recall of the past ill luck of the BA–1401. Nor are they relieved by showing that she has not suffered in utility value or in market value.

■ To illustrate, although an automobile through age or misfortune may have no value in the market save for scrap, and although still another nick in its paint or shape may not appreciably reduce the usefulness or dollar-value of the car, nevertheless its checkered career and disreputable appearance do not assure absolution to one who negligently further scars the vehicle. The owner is entitled to have the automobile free of even that dent. De minimis non curat lex does not, semble, apply to damages but only to injury. Fullam v. Stearns, 30 Vt. 443, 455 (1857).

■ "Restitutio in integrum" is the precept in fixing damages, and "where repairs are practicable the general rule followed by the admiralty courts in such cases is that the damages assessed against the respondent shall be sufficient to restore the injured vessel to the condition in which she was at the time the collision occurred; * * * " The Baltimore, 8 Wall. 377, 75 U.S. 377, 385, 19 L.Ed. 463 (1869)[1].

■ The workable guides to this end, generally stated, are these. If the ship sinks and is beyond recovery, the damages are her value just before she sank, plus interest thereon until payment. If she is not a complete loss and repossession or repairs are both physically and economically feasible, then the reasonable cost of recovery, including repairs and an allowance for deprivation of use, is the measure. But if the reclamation expense including repairs exceeds the ship's just value at the time of the casualty, or if repairs are not both physically and economically practicable, then it is a constructive total loss, and the limit of compensation is the value plus interest. O'Brien Bros. v. The Helen B. Moran, 160 F.2d 502 (2 Cir. 1947).

The case at bar comes closer to the second category—the loss was not complete, repairs were physically practicable, but the question remains whether they were economically so. The answer depends on whether the repair cost was more than the value of the barge. Libelant has shown a fair estimate for the repairs to be between $2895.00 and $3000.00. If this expense was beyond the fair and reasonable monetary value of the vessel to the owner, then the recovery is limited to such value. Cf. The Nyland, 164 F.Supp. 741, 743–744 (D.C. Md.1958).

■ When, as here, the tortfeasors assert that the value is less than the cost of repairs, they have the burden to establish that fact. The respondents have failed to do so. Consequently, the case stands on the proof of the repair cost, and the libelant· is entitled to a decree in that amount.

■ The District Court made no finding of value. It merely found that the BA–1401 had no value save for sale as scrap, but this is not the equivalent of fixing a figure of value. Moreover, it is erroneous. It is refuted by the other uncontested findings of her continuing utility.

■ Apparently, the chief factor influencing the District Judge in this determination was the absence of any mar-

---

[1]. Nothing said in Zeller Marine Corp. v. Nessa Corp., 166 F.2d 32 (2 Cir. 1948) would circumscribe this holding. There the Court concluded that repairs would serve in lieu of replacement of damaged keelsons, and so disallowed the claim for new ones. It was in this context that

Judge Augustus Hand stated that a libellant was "only entitled to an award that would give him a boat as seaworthy and practically serviceable as before and not to an award, often much larger, sufficient to restore her to the identical condition she was in before the injury".

ket for the sale of the barge. That problem, however, cannot justify withholding all value from libelant's vessel. Zvolanek v. Bodger Seeds, Ltd., 5 Cal. App.2d 106, 42 P.2d 92 (1935). The special value to the owner is a consideration of substance. The Nyland, supra, 164 F.Supp. 741.

"It may be that property destroyed or lost has no market value. * * * it does not follow from this, nor is it the law, that the plaintiff must be turned out of court with nominal damages merely." Southern Express Co. v. Owens, 146 Ala. 412, 41 So. 752, 755–756 (1906). If there is no market value, other indicia of value must be looked to. Standard Oil Co. v. So. Pacific Co., 268 U.S. 146, 155, 45 S.Ct. 465, 69 L.Ed. 890 (1925); The President Madison, 91 F.2d 835, 845 (9 Cir. 1937); The I. C. White, 295 F. 593, 595 (4 Cir. 1924). Among other factors is the use value to the owner. As was said in Bishop v. East Ohio Gas Co., 143 Ohio St. 541, 56 N.E.2d 164, 166 (1944):

"Market value is the standard which the courts insist on as a measure of direct property loss, where it is available, but that is a standard not a shackle. When market value cannot be feasibly obtained, a more elastic standard is resorted to, sometimes called the standard of value to the owner. This doctrine is a recognition that property may have value to the owner in exceptional circumstances which is the basis of a better standard than what the article would bring in the open market."

See, too, 12 A.L.R.2d 911, 913.

■ Even if the cost of repairs be limited to the *diminution* in value of the ship rather than to her entire value, our decision would, for at least two reasons, not be different. The first point of our conclusion here is that no such values were proved. Beyond that, however, the second point is that in admiralty, the cost of repairs is the equivalent of value-diminution. "Damage less than total loss is compensated by reference to cost of repairs. * * *" Gilmore & Black, Admiralty 436; Pan-American Petroleum & Transport Co. v. United States, 27 F.2d 684, 685 (2 Cir. 1928):

"* * * Strictly the measure of damages in collision is the difference in value between the ship before and after the collision, but the cost of the necessary repairs and the loss of earnings while they are being made have long been regarded as its equivalent. * * *"

Furthermore, the cost of repairs is considered an accurate measure. Diminution in value is always dependent upon an opinion, while repairs are not quite so speculative. This distinction was noted in The Schooner Catharine v. Dickinson, 17 How. 170, 58 U.S. 170, 15 L.Ed. 233 (1854). Then, too, the preference is based on practicalities, as well illustrated here.

The order on appeal will be vacated, and the cause remanded with request to the District Court to enter a decree awarding the appellant Hewlett damages of $2895.00, with interest at 6% per annum from the date of the collision until paid, together with costs in the trial and appellate courts.

Reversed and remanded for entry of judgment.

SOBELOFF, Circuit Judge, concurs in the result.

HAYNSWORTH, Chief Judge (dissenting):

With respect to my brothers, I must dissent, for I think they misapprehend the record, the issue presented, and the legal principle which should control its resolution.

Clarity may be served if I first lay aside one area in which there is no disagreement between us. The fact that the barge had earlier been declared a total constructive loss gave no subsequent wrongdoer an immunity. The District Judge did not hold otherwise. I readily agree, too, that the fact that she was previously declared a constructive total

loss has no legal significance in itself in the assessment of the damages or in the application of the governing legal principles. It has only historical significance as the basis upon which the salvor, the principal libelant, acquired her. The prior physical history of the barge, however, is highly relevant in explanation of her condition, her value and potential uses, with respect to all of which the record is far clearer with much less disagreement than the majority opinion might indicate.

The Barge 1401 had been purchased in 1958 for $40,000 and immediately insured for $45,000. One month later she sank. After salvage operations, the lowest bid for restoration to her former condition was $46,290. That was why she was declared a constructive total loss and surrendered to the salvor.

The salvor effected certain repairs costing only $1305.76, which had the effect of making her hull watertight. She was then usable as a pontoon in other salvage operations, as she was once used. It gave her a theoretical potentiality for hauling deck cargo, though she had never been used for such a purpose, and it is very doubtful that she could have been insured for such use.

The barge in her then condition had a market value of $5,616. This was her scrap value, but it was a ready market value, and it seems to me to be a mistake to approach the case as if there were no market value when everyone agrees there was.

Everyone agrees, too, that the market value of $5,616 was not affected in the slightest by the additional dent inflicted in her side when the Barge Bertie collided with her. The already battered Barge 1401 had a scrap value after the additional dent of $5,616, just as she had before.

The libelant here, of course, claimed that the Barge 1401 had a special value to him for use as a pontoon, as once he used it, and potentially, but highly theoretically, for use in carrying telephone poles or other dry deck cargo, a use in which she had never been engaged. It is true, of course, that the special value, if any, was not determined in the District Court, but everyone agrees that the additional dent placed in her side by the Barge Bertie did not effect any diminution in that value, whatever it was. She was as useful as a pontoon after she sustained this dent as she was before, and whatever potential she had for use in carrying deck cargo was not impaired in the slightest.

Under these circumstances, of course, the owner did not attempt to effect the repair of the barge for the repairs were estimated to cost $2,895, and that expenditure would not enhance the value of the barge or its usefulness to the libelant, or to anyone else, in the slightest. No one claims that any such repairs would ever be attempted. If the libelant prevails on the basis of the opinion of my brothers, his winnings will go as cash into his pocket and will not be applied to any reparation of the barge. It is thus clear beyond all dispute that repair is not economically practicable or feasible, and in no event will it be attempted.

It is thus settled in the record that the additional dent inflicted by the Barge Bertie occasioned no diminution in the market value of the Barge 1401 of $5,616; it occasioned no diminution in any special value she may have had to the libelant. Between the parties, there is no dispute about this. The conclusion is inescapable that the libelant has suffered no economic loss. The question then is whether the libelant's damages should be measured by his economic loss, as was done in the District Court, or by an estimate of the cost of economically imprudent and senseless repair which has not been and never will be incurred.

I think the damages are to be measured by the economic loss sustained by the libelant and that no different rule can be found in admiralty by looking at isolated statements lifted from their context.

In Williamson v. Barrett, 54 U.S. (13 How.) 101, 110, 14 L.Ed. 68, the Court

stated what until today never seems to have been doubted: "The general rule in regulating damages in cases of collision is to allow the injured party an indemnity to the extent of the loss sustained." The loss sustained, of course, is the difference in the value of the vessel before and after the collision, together with a sum to compensate for the loss of her service during the completion of repairs, if she is reparable. The particular question in *Williamson* related to the latter assessment. When repairs are economically feasible, however, the assessment of the first item of damage may not depend upon generalized appraisals of the value of the vessel before and after the collision, for the difference in fact is measured by the cost of repair. This was clearly stated in The Schooner Catharine v. Dickinson, 58 U.S. (17 How.) 170, 15 L.Ed. 233. The Catharine sank as a result of a collision just off the New Jersey coast and her owners sold her where she lay for $140. They claimed the difference between the appraised value of the vessel before the collision and $140. The fact, however, was that the schooner had been raised, repaired and returned to service. The Supreme Court held that the actual cost of raising the vessel, repairing her and returning her to service was a more accurate measure of the diminution in value than could be gotten by use of the owner's sales price before she was raised or by the general opinions of inexpert witnesses that the vessel was worth no more than the owner's appraisal before she was refloated.

Since the Supreme Court's decision in *The Catharine* one frequently encounters the expression that the cost of repairs is the equivalent of the diminution in value. This is factually true whenever repairs are economically feasible, for whatever the appraisal of the vessel's value before the collision, all practical men know that the diminution in value is measured by the reasonable cost of necessary repairs to substantially return the vessel to its former condition. That is a more accurate measure of the diminution than a comparison of appraisals by some of the precollision value with general appraisals by others of the postcollision value, as was held in *The Catharine*.

Where factual equivalency exists between diminution in value and cost of repair, there are still some limitations, for when the cost of restoring the vessel to her former condition is disproportionate to the cost of more limited repair which would substantially restore the vessel's utility, recovery must be measured by the cost of the lesser repairs.[1] As Judge Augustus Hand has stated in Zeller Marine Corporation v. Nessa Corporation, 2 Cir., 166 F.2d 32, 34, the owner "is only entitled to an award that would give him a boat as seaworthy and practically serviceable as before and not to an award, often much larger, sufficient to restore her to the identical condition she was in before the injury."[2] Where factual equivalency exists, therefore, between diminution in value and cost of repair, it is equivalent to the cost of such limited repairs as are necessary to make the vessel as seaworthy and practically useful as before, which, in this case, is nothing at all.

There is not factual equivalency between diminution in value and the cost of repair when the cost of repair is greater than the precollision value of the vessel. In such a case, the measure of damages is clearly the precollision value of the vessel.[3] That this truism

---

1. The J. T. Easton, S.D.N.Y., 24 F. 95, 96; Zeller Marine Corp. v. Nessa Corp., 2 Cir., 166 F.2d 32, 33–34.

2. The attempted distinction of *Zeller* by my brothers is actually a rejection of it; if *Zeller* and the majority opinion stand, the libelant in this case would receive only $50 had an expenditure of that amount been necessary to restore its seaworthiness even though total repairs would cost much more. But my brothers give him the total cost of repairs when seaworthiness is not impaired by the collision.

3. See, e. g., The Nyland, D.C.Md., 164 F. Supp. 741, 743–744.

is sometimes expressed as a limitation upon the right to recover cost of repairs does not obscure the absence of factual equivalency between diminution in value and cost of repair and the irrelevance of the cost of repair in such a situation. Cost of repair is not the measure of damages simply because in that situation it is not the factual equivalent of diminution in value.

In this case there is no factual equivalency between diminution in value and cost of repair. The parties and the court are agreed that there was no diminution in the market value of the barge, or in any special value it may have had to the libelant.[4] The barge is now as seaworthy and as practically useful to the libelant as it was before the collision; it is worth just as much on the market. The majority, therefore, inevitably are suggesting that despite the conceded absence of factual equivalency between diminution in value and cost of repair, there is a legal equivalence which requires a disregard of its factual inconsistency. This, I submit is clearly refuted by the cases and the situations mentioned above when the cost of repair is not allowed as a measure of recovery in the absence of factual equivalency between such costs and diminution in value. It is a novel suggestion for which I can find no support in any case, and which seems to me at war with reason. With the assessment of damages, we move in a very practical field where regard must be had for factual differences and obfuscating legal presumptions which would substitute rules of law for factual assessments have no place.

If my brothers are right, the libelant is unduly enriched. He must hope greatly that another errant navigator will hit his battered barge again, and still another yet again, so that each time he may happily pocket the estimated cost of theoretical repairs which neither he nor anyone else will ever dream of undertaking while retaining all along a barge as seaworthy and useful to him and of undiminished worth if he chooses to sell it.

The question is not whether the battered barge is an outlaw. It is not. The District Court held the tug and the Barge Bertie responsible for the economic loss of the libelant, and, of course, awarded to the libelant the costs of the action. I think the District Court properly determined the amount of the libelant's loss and that my brothers stray far afield when they undertake to reappraise it by their creation of a legal presumption which is demonstrably inconsistent with the conceded factual situation.

I would affirm the judgment.

---

4. The majority opinion suggests that the special values before and after the accident were not proved. The libelant, of course, would bear the burden of such proof, but the lack of such proof is irrelevant since the stipulated facts prove that there was no difference in the values.