**SELF TOWING, INC., et al., Plaintiffs,**

v.

**BROWN MARINE SERVICE, INC., Defendant,**

**Employers Insurance of Wausau, Intervenor.**

**Civ. A. No. 86–0052–T.**

United States District Court, S.D. Alabama, S.D.

Dec. 19, 1986.

As Amended Dec. 22, 1986.

Barry Gordon Terranova, M.A. "Bubba" Marsal, Mobile, Ala., for plaintiffs.

James W. Tarlton, III and David A. Boyett, Mobile, Ala., for defendant.

J. Hodge Alves, III, Mobile, Ala., for intervenor.

DANIEL HOLCOMBE THOMAS, Senior District Judge.

This admiralty collision case was filed January 13, 1986. Following a trial on the merits which began on October 16, 1986, the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The plaintiffs, Self Towing, Inc. (Self Towing) and KJI, Inc. (KJI) at all material times, were and still are corporations organized and existing under the laws of the State of Alabama, and doing business in Mobile, Alabama.

2. At the time of the collision made the basis of this lawsuit, the M/V BLACK JACK was owned by KJI and was under bareboat charter to Self Towing. The BLACK JACK was a 57 × 21 foot, steel hulled, 800 horsepower triple screw tug/push boat. The BLACK JACK was built in 1963 and purchased new at a cost of between $70,000 and $75,000.

3. The intervenor, Employers Insuraance of Wausau, at all material times, was and is an insurance company whch provided coverage to the plaintiffs. The intervening insurance company has paid pursuant to its Policy EWH–8162, $73,-372.00.

5. At all material times, the defendant Brown Marine Services, Inc., (Brown Marine) was and still is a corporation organized and existing under the laws of the State of Florida, and doing business in Pensacola, Florida. Brown Marine was at all times the owner and operator of the M/V ERNEST H. DOSS and its tow.

6. On February 20, 1985, the BLACK JACK and her tow, (consisting of a crane barge and a material barge moored along side the crane barge) were moored along the North bank of the Gulf Intracoastal Waterway, at or near mile 271 approximately 300 feet west of the West Bay Bridge, a lift draw bridge located in West Bay, Florida. The bridge opening is approximately 86 feet wide and is located in the middle of the 125 foot channel. The channel runs straight through the bridge opening. When the bridge is open, its center is marked by a green light on the lift span of the bridge.

7. The BLACK JACK and her tow were moored at this site for the purpose of unloading shell. It was common knowledge that the site, owned by the State of Florida, had been operated as a shell unloading site for a number of years.

8. The BLACK JACK and its tow were positioned at the shell unloading site in the manner as was the custom at that particular site. The plaintiffs' flotilla was not moored or made up in the channel in such a fashion so as to obstruct the channel. Prior to the collision in question, which occurred about 9:30 on the night of February 20, 1985, other vessels had passed through the West Bay Bridge going both east and west. No other vessel had any problems navigating past the plaintiffs' flotilla.

9. Just prior to 9:30 P.M., the defendant's vessel, ERNEST H. DOSS, was pushing a tow consisting of two empty oil

barges. These oil barges were approximately 234 feet long. The tow was made up end to end totaling approximately 468 feet in length. At this time, the DOSS's Captain was W.V. Colbert.

10. Fog was present in the area in patches. At or around Mile 271 of the Gulf Intracoastal Waterway, dense fog was present with visibility being severely restricted.

11. The Captain of the DOSS testified that immediately prior to passing through the West Bay Bridge, he blew his whistle for the bridge attendant to open the bridge and he saw lights on and near the bridge in the vicinity of the shell unloading site. He stated he knew that this area was commonly used as an unloading site.

12. Captain Colbert further testified that, at the time he proceeded through the bridge, he could not see the end of his tow and that his visibility was restricted. The defendant's vessel did not have a lookout on the end of its tow. The M/V DOSS had run in and out of the patches of fog at various times on February 20, 1985, so Captain Colbert was aware of the fog conditions.

13. The court finds that, as the DOSS passed through the bridge with restricted visibility, the vessel got off course and struck the BLACK JACK. The lead tow of the DOSS struck the BLACK JACK on the port side of the stern and pushed the vessel along for approximately 100 feet. The testimony, angle of impact, and the physical damage established that the DOSS and its tow approached the BLACK JACK on a west northwest course. The channel runs on an east-west axis.

14. The defendant's operation and navigation in restricted visibility, into an area that the captain of the vessel knew was used for shell unloading, was negligent and this negligence was the proximate cause of the collision in question. Captain Colbert stated that he had operated vessels in this area of the Intracoastal Waterway for a substantial number of years and that he was familiar with the shell storage site and with the normal formation of the shell un-

loading flotilla, that being the crane barge next to the shore, the material barge made up to its port side and the tow boat at the aft center of the material barge. Captain Colbert testified it had crossed his mind just before he went through the bridge that a vessel might be at the site unloading shells. He was aware of the foggy conditions because he had been running in and out of fog prior to the collision.

15. The Court's finding that Captain Colbert in electing to take the risk of proceeding rather than waiting until his visibility improved was negligence which resulted in the striking of the BLACK JACK and places liability on the defendant for the resulting damages.

16. The BLACK JACK was severely damaged and could not return to its home port in Mobile Alabama, under its own power and had to be towed back to port.

17. After the BLACK JACK was towed back to Mobile, Alabama, a damage survey was performed by John Van Aken on behalf of the plaintiffs' insurance carrier with the main purpose of this survey being to see if the damage exceeded the amount of the insurance coverage.

18. Wesley Holmes conducted a survey of the marine damage to the BLACK JACK on behalf of the defendant. Holmes did not testify at the trial.

19. Neither marine surveyor tested the engines of the BLACK JACK after the collision. The plaintiffs testified they tried to start the engines of the BLACK JACK following the collision, but that they went dead when put under strain and that was the extent of their testing.

20. After performing the survey, Van Aken elicited repair bids from several shipyards in and around the Mobile area. Mobile Shipbuilding bid $70,854.16 to repair the damage. Bender Shipbuilding and Repair bid $98,000 to repair the damage. Neither bid included any repair to the engines.

21. The plaintiffs had the BLACK JACK insured under a hull policy with the

Intervenor for an agreed "insured value" of $70,000.

22. The damage to the BLACK JACK was in excess of the insured value of $70,000.

23. The insurance company rendered the BLACK JACK to have been a "constructive total loss". Thus, the damages are limited to the fair market value of the vessel at the time of the collision. *Ryan Walsh Stevedoring Company v. James Marine Services, Inc.* 792 F.2d 489 (5th Cir.1986); *Hewlett v. Barge Bertie,* 418 F.2d 654 (4th Cir.1969).

24. "Where a vessel is totally lost through collision, the damages her owner can recover are her value, measured where possible by her 'market value'...." Gilmore and Black, *The Law of Admiralty,* 524 (2d ed. 1975). But the Gilmore and Black treatise admits sometimes the "market price" concept breaks down, such as when there exists a depressed market as in the case at hand. In *Sawyer, Inc. v. Poor,* 180 F.2d 962 (5th Cir.1950), the Fifth Circuit Court of Appeals, noting the lack of any reliable "market value" criterion, reviewed some of the factors that go into the making of a judgment of value:

> All agree that the usual and customary method in determining damages in cases of maritime collision is the market value of the vessel in the case of loss. *See, Standard Oil Co. v. Southern Pacific Co.,* 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890. But in cases where no market value has been established by recent and comparable sales other evidence is admissible touching value such as the opinion of marine surveyors, engineers, the cost of reproduction [or replacement], less depreciation, the condition of repair which the vessel was in, the uses to which it can be put, the amount of insurance that the underwriters have issued, and the like. *Sawyer,* 180 F.2d at 963 (5th Cir. 1950).

Even though both sides presented expert testimony consisting of value opinions and of some other allegedly comparable vessel sales, this Court is of the opinion and finds that the market for pushboats, such as the BLACK JACK, cannot be accurately ascertained as of the date of the collision. Accordingly, in reaching its finding as to value, the Court has by necessity, made its determination by reference to what it cost the plaintiff to replace the BLACK JACK. In other words, what it cost to make the BLACK JACK whole.

The plaintiff after a frustrating search finally bought another vessel 52 days after the collision. This vessel which the plaintiffs considered was substantially comparable to the BLACK JACK was purchased at the cost of $225,000. However, evidence shows that the plaintiff spent some extra money to fix up the engines. But due to the lack of evidence concerning the condition of the BLACK JACK's engines, and considering the plaintiff's duty to mitigate damages and the Court's duty to deduct for depreciation, the extra expense of $77,519.00 for repairs and adaptations of the new vessel is disallowed. The Court finds the BLACK JACK's reasonable market value at the time of the collision to have been the $225,000 replacement cost. The plaintiff is therefore entitled to recover the replacement cost, less the $70,000 which the intervening insurance company paid to the plaintiff, for a recovery of $155,000.00. The intervening insurance company is entitled to recover its $70,000.00.

25. To the extent any of the foregoing findings of fact constitute conclusions of law, they are incorporated therein.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of this litigation and the parties thereto pursuant to 28 U.S.C. § 1333.

2. The Inland Navigational Rules, 33 U.S.C. § 2001, *et seq,* are applicable to the present case since the collision occurred on the Gulf Intracoastal Waterway.

3. A vessel and its owner are presumed to be at fault when a moving vessel strikes a stationary object. *The Oregon,* 158 U.S. 186, 197, 15 S.Ct. 804, 809, 39

L.Ed. 943 (1895); *The Victor*, 153 F.2d 200 (5th Cir.1946); *Complaint of Chevron Transport Corp.*, 613 F.Supp. 1428, 1436 (D.C. Fla.1985). When such a collision occurs, the presumptive fault of the moving vessel has been held sufficient to yield a prima facie case of negligence against the vessel. *Brown and Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724 (5th Cir.1967); *Skidmore v. Grueninger*, 506 F.2d 716 (5th Cir.1975).

4. When a moving vessel collides with a non-moving vessel, there is not only a presumption in favor of the non-moving vessel, but there is a presumption of fault on the part of the moving vessel which shifts the burden of proof to the moving vessel. *The Oregon*, 158 U.S. 186 at 197, 15 S.Ct. 804 at 809, 39 L.Ed. 943 (1895) *Rosado v. Pilot Boat No. 1*, 304 F.Supp. 49 (D.C. Puerto Rico 1969).

5. Under the restricted visibility conditions of the night of February 20, 1985, due to the fog, the DOSS was in violation of Rule 5 of the Inland Rules, 33 U.S.C. § 2005, in that all vessels are to "maintain a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision." Despite testifying that he could not see to the head of his tow, Captain Colbert confirmed that he did not post a lookout at the head of his tow to aid in navigation. Under the prevailing conditions of restricted visibility, not only would Rule 5 be violated, but the failure to post a lookout also goes to whether the ERNEST H. DOSS should have been navigating at all.

6. Rule 7(a) of the Inland Rules, 33 U.S.C. § 2007(a), provides that "Every vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists. If there is any doubt such risk shall be deemed to exist." This rule certainly applies to Captain Colbert's failure to utilize a lookout under the weather conditions he conceded to exist. Further, Captain Colbert became aware of a light he described as a "flood light" prior to passing through West Bay Bridge and he was aware of the fact that this area was utilized for material unloading. Yet he failed to take any precautionary action to ascertain the source of the light.

7. The defendant, Brown Marine, maintains that the BLACK JACK failed to comply with the lighting requirements of subpart (a) or (b) of Rule 30 of the Inland Rules, 33 U.S.C. § 2030.

■ The Court finds that even if the BLACK JACK was required at the time to comply with Rule 30, such failure not only did not cause this striking but, in the Court's opinion, could not have prevented this striking. The omission of proper lights by one vessel involved in a collision will be disregarded as an element of fault where the display quite obviously could not have prevented the accident. *Rosado v. Pilot Boat No. 1*, 304 F.Supp. 49 (D.C. Puerto Rico 1969); *Diamond State Telephone Company v. Atlantic Refining Co. Inc.* 104 F.Supp. 753 (E.D.Pa.1953). At the trial Captain Colbert testified he could not even see the end of his tow so it is doubtful that more lights on the BLACK JACK would have prevented the collision. The Captain of the DOSS saw both yellow and white lights west of the West Bay Bridge in essentially the same position as the BLACK JACK and in the area that he knew was used for unloading. However, he took a "business risk" and proceeded through the bridge. If the captain saw the various other lights and still proceeded, it appears that one more light would not have caused him to discontinue his passage through the bridge. The observation of these lights at the location of the BLACK JACK did not prevent Captain Colbert from navigating through and west of the bridge, nor make him take other precautionary measures to determine the source of the lights and evaluate the risk presented. Based on its consideration of all the evidence and observation of the witnesses which testified at trial, the Court finds it impossible to conclude that, if the BLACK JACK had had one additional all-round

light, Captain Colbert would have acted differently.

8. The Court finds that the defendant's vessel, the ERNEST H. DOSS, should not have been navigating due to the heavy fog with the limited visibility in the area where the collision occurred.

■ 9. Where a vessel is guilty of one or more statutory violations it is presumed to be at fault. In order to overcome this presumption and escape liability, the vessel at fault must prove not only that the fault did not cause the collision but also that it could not have caused the collision. *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874).

■ The defendant, Brown Marine Services, Inc. did not meet its burden of proof in this case. The defendant did not prove that its statutory violations did not cause the collision. Plus, Brown Marine did not prove that the plaintiffs, if they committed any statutory violations, caused the collision.

■ 10. A bareboat charterer is entitled to claim the same damages as an owner of the vessel could have claimed under like circumstances. *Reed v. United States*, 78 U.S. (11 Wall.) 591, 20 L.Ed. 220 (1871); *Leary v. United States*, 81 U.S. (14 Wall.) 607, 20 L.Ed. 756 (1872); *Reed v. The Yaka*, 373 U.S. 410, 412, 83 S.Ct. 1349, 1351, 10 L.Ed.2d 448 (1963). Therefore, the plaintiff, Self Towing, Inc., being the bareboat charterer of the M/V BLACK JACK from the plaintiff, KJI, Inc., is entitled to the legal status of an of an owner for the purpose of claiming damages as a result of this collision.

■ 11. The Court finds that the collision rendered the BLACK JACK a total constructive loss. In such cases, damages are limited to the fair market value of the vessel at the time of the collision. *Ryan Walsh Stevedoring Company v. James Marine Services, Inc.*, 792 F.2d 489 (5th Cir.1986); *Hewlett v. Barge Bertie*, 418 F.2d 654 (4th Cir.1969). Considering all the evidence, expert testimony and documents supplied to this Court, it was impossible for

this Court to determine the actual market value of the BLACK JACK prior to the collision. When it is impossible to determine the actual market value at the time of the collision of a vessel, the Court can determine what the loss of the vessel cost the plaintiffs. Gilmore and Black, *The Law of Admiralty*, 525 (2d ed. 1975). Therefore, the Court awards as damages $155,000, which is the $225,000 replacement cost of a new vessel, minus the $70,000 which the intervening insurance company paid to the plaintiffs following this collision. The plaintiffs sought damages for loss of use, sue and labor and lost insurance premiums, however, the Court concludes the plaintiffs have failed to prove these damages with the "reasonable certainty" required by the law. *The Conqueror*, 166 U.S. 110, 115, 17 S.Ct. 510, 512, 41 L.Ed. 937 (1897); *see*, *Delta Steamshipline v. Avondale Shipyards*, 747 F.2d 995 (5th Cir.1984). The Court did not have to reach this last conclusion since the BLACK JACK was determined to have been a constructive total loss, but does so in the interest of clarity.

A Judgment will be forthwith entered in accordance with these Findings of Fact and Conclusions of Law.

## JUDGMENT

Pursuant to the Findings of Fact and Conclusions of Law entered this date, it is ORDERED, ADJUDGED and DECREED that a Judgment in the amount of ONE HUNDRED, FIFTY-FIVE THOUSAND DOLLARS ($155,000) be, and hereby is, entered in favor of the plaintiff Self Towing, Inc. and against the defendant, Brown Marine Service, together with pre-judgment interest at the rate of 10% per annum from February 20, 1985, to this date, and post-judgment interest at the rate of 5.75% from this date until paid.

Costs are taxed against the defendant.

## JUDGMENT

Pursuant to the Findings of Fact and Conclusions of Law entered on December

19, 1986, and Amendment thereto, entered this date, it is ORDERED, ADJUDGED and DECREED that a Judgment in the amount of SEVENTY THOUSAND AND NO/100 DOLLARS ($70,000.00) be, and hereby is, entered in favor of the intervenor, Employers Insurance of Wausau, and against the defendnat, Brown Marine Service, together with pre-judgment interest at the rate of 10% per annum from February 20, 1985, to this date, and post-judgment interest at the rate of 5.75% from this date until paid.

Costs are taxed against the defendant.