Edward S. **PETERSEN** et al.,
Plaintiffs,
and
**United States of America,**
Intervenor-Plaintiff,
v.
**HEAD CONSTRUCTION COMPANY,**
Defendant.

Civ. A. No. 858–72.

United States District Court,
District of Columbia.

Nov. 30, 1973.

Alan Raywid, Washington, D. C., for plaintiffs.

Michael A. Katz and J. Michael McGarry, Asst. U. S. Attys., Washington, D. C., for intervenor-plaintiff.

John J. O'Neill, Jr., Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. PRATT, District Judge.

This case came on for trial without a jury on May 23–25 and 29, 1973. After hearing and considering all of the evidence and submissions, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff Edward S. Petersen is a 26-year-old male who at the time of this accident was a trumpet soloist in the United States Navy Band. Plaintiff Petersen was the owner and operator of the fiberglass planing hull boat, 14 feet in length with a 4½ foot beam, and powered by a 50 h.p. Mercury outboard engine, one of the two craft involved in this incident.

2. Plaintiff Larry Schickram is 28 years old and employed by Congressional Oldsmobile. At the time of the collision, plaintiff Schickram was a passenger in the Petersen boat, seated to the left of Petersen.

3. Defendant Head Construction Company is a roadway construction firm whose principal place of business is the District of Columbia. Defendant Head chartered and operated a barge, 93 feet in length with a 43-foot beam, which was the vessel with which the plaintiff Petersen's boat collided. The barge had no motive power of its own but was moved by a tug owned and operated by the defendant Head Construction Company.

4. Around the time of the occurrence Head Construction was engaged in completing the road surface of the Center Highway Bridge which was to be part of the I–95 interstate route. The Center Highway Bridge was one of three bridges extending across the Potomac from 14th Street in the District of Columbia to the Virginia side of the river.

5. Defendant's barge was used for the temporary storage and transportation of wooden forms stripped from the concrete work at the road level of the Center Highway Bridge. Defendant's tug would shift the barge to wherever work was to be performed.

6. At the end of the work day on Friday, September 4, 1970, the defendant left the barge moored lengthwise under Span 10 of the Center Highway Bridge. Span 10 is that area of the bridge between Piers 9 and 10, some 145 feet in length, and located just to the right (proceeding upstream) of the marked center portion of the channel.

7. That portion of the Potomac River which passes under Span 10 of the above-mentioned Center Highway Bridge constitutes part of the navigable waters of the United States.

8. The passage under Span 10 is approximately 133 feet wide. The defendant's barge, approximately 93 feet long and moored lengthwise, was set back several feet from the edge of the pier ends and under the overhead roadway.

9. The barge was moored in this location to await the commencement of work under Span 10 which was scheduled to begin September 8, 1970, after the Labor Day weekend.

10. The defendant had equipped the barge with four yellow flashing road warning lights, one in each corner. The Court finds that these lights were operating at the time of the collision and constituted the only illumination of the barge.

11. On the night of September 4, 1970, plaintiff Petersen operated his boat upstream on the Potomac on a course

just to the right of the marked portion of the channel. Plaintiff Schickram accompanied him seated to his left. The night was clear with excellent visibility.

12. Upon approaching the bridges in the 14th Street area at approximately 10:00 p.m., Petersen cut his throttle to half speed or about 15 miles per hour. The plaintiff passed under the two bridges downstream to the Center Highway Bridge without incident. Petersen then approached the Center Highway Bridge to the right of the middle of Span 10.

13. At the last instant before impact, plaintiff Petersen noticed the presence of defendant's barge obstructing the passage under Span 10. The Petersen boat then struck the barge head-on and the impact rendered both Petersen and Schickram unconscious.

### Liability

14. As noted above, the speed of Petersen's boat was fifteen miles per hour immediately prior to collision and the Court finds that this speed was excessive and immoderate due to the conditions of darkness, harsh shadows under the bridge, the construction area and possible debris in the Potomac River, all of which conditions were known or should have been known to the plaintiff Petersen prior to the collision.

15. The Court also finds that plaintiff Petersen failed to keep a proper and efficient lookout in an area where conditions of darkness, shadows and construction were known or should have been known to exist.

16. As to the defendant Head Construction Company, the Court finds that defendant's barge was obstructing the passage under Span 10 by occupying 93 feet of the 133 feet wide passage.

17. The Court finds that nothing in the language of the job specifications even purports to exempt floating equipment of the defendant contractor from the ordinary rules and regulations pertaining to vessels on navigable waters.

18. The Court is unable to make a finding with respect to the oral permission allegedly secured from the Harbor Police authorizing the placing and positioning of the defendant's barge. The Court does find, however, that any such permission would have been premised on an inadequate description of the location, manner and time of the mooring and therefore of no effect.

19. The Court finds that the defendant did not obtain authorization for the mooring from either the Army Corps of Engineers or from the U. S. Coast Guard.

20. The Court finds that a Mr. Horvath, the job inspector from the District of Columbia government, approved the mooring of defendant's barge under Span 10. The Court also finds, however, that said permission was conceded by Mr. Horvath to be beyond his competence and authority.

21. The Court finds that defendant's barge was not equipped with the standard white light as prescribed for vessels at anchor by Article 11 of the Rules of the Road, 33 U.S.C. § 180.

### Plaintiff Schickram Damages

22. As a proximate result of the accident in question, plaintiff Schickram suffered a mild cerebral concussion, laceration above his left eyebrow, bruises of his knees, chest and hip. In addition, he suffered from disorientation and confusion as well as head pains.

23. Plaintiff's head laceration has left a scar but this can be substantially remedied by surgery. Whatever disfigurement which remains after surgery is his only permanent injury.

24. Plaintiff Schickram's actual medical expenses amount to $116.55 whereas his estimated future medical expenses approximate $900.00.

25. Plaintiff Schickram has suffered no diminution of his future potential earning capacity. Nor has this plaintiff suffered any loss of income due to his injury.

*Plaintiff Petersen Damages*

26. As a proximate result of the accident in question, plaintiff Petersen suffered three fractures to his jaw, i. e., fracture of the mandible symphysis, fracture of the right condyle mandible and fracture of the left condyle mandible. In addition, he suffered a laceration of the left auditory canal and a small chin laceration.

27. After appropriate treatment, Petersen has regained the normal use of his jaw for the purposes of eating, speaking and appearance. Jaw movement or mobility, however, has not been completely restored. Forward protrusion of the lower jaw has been impaired. Lateral movement of the jaw is not equal as a result of a restriction on movement to the right side.

28. These changes in jaw movement and changes in physical formation have resulted in a concomitant change in the plaintiff's "embouchure" which in turn adversely affects Petersen's ability to play the trumpet or any other wind instrument. This handicap in playing wind instruments is due to the loss of muscle control and sensitivity in the lips, realignment or change in jaw formation, and facial muscular control in the mouth, all of which Petersen has sustained as a result of the injuries incurred in this accident.

29. As a result of his injuries Petersen was hospitalized approximately three weeks during which time he experienced considerable pain and anxiety. He also spent three weeks recuperating after release from the hospital before returning to the Navy band for clerical duties.

30. As a further result of the injuries he sustained in this accident, Petersen has been unable to perform in the Navy band and has been relegated to the job of copyist for the band. The copyist's job is to transcribe by hand musical scores for each of the different instruments. He remained at his same pay level, currently $8,712.00 per annum. Petersen's expected future income from the Navy is $9,680.40 per annum.

31. Plaintiff Petersen had the potential to earn a substantial salary as a professional musician and this potential is denied him as a result of this accident. The Court finds $15,000 per annum as the average salary that Petersen could have expected as 'a professional trumpet player over the course of his expected life span. This figure specifically takes into consideration the highly competitive nature of the profession which makes future income predictions very speculative.

32. As of June, 1972, Petersen's work expectancy to age sixty-five was 39 years. The Court therefore computes plaintiff Petersen's damages due to his loss of earning capacity as follows:

(a) Future impairment of earning capacity: $15,000 less $9,680 equals $5,320 lost income. Multiplied by 38 years of future work expectancy, this amounts to a loss of $202,160.00, reduced to present value at 6% = $78,980.72.

(b) Impairment of past earning capacity is computed as $15,000 less $8,700 current salary, or $6,300.

(c) Petersen's total damages for loss of earning capacity equal $85,-280.72.

*Intervenor-Plaintiff Damages*

33. As a result of the accident referred to above, plaintiff Petersen, as a member of the United States Navy, was hospitalized and received medical care and treatment at Bethesda Naval Hospital, Bethesda, Maryland, a medical treatment facility of the United States Navy and owned and operated by the intervenor-plaintiff United States of America. Plaintiff Petersen also received emergency medical care and treatment at the George Washington University Hospital at the expense of said intervenor-plaintiff.

34. Plaintiff Petersen was hospitalized as aforesaid for 20 days commencing on September 5, 1970, and was treated on four occasions on an out-patient basis for treatment of injuries received in the above-mentioned accident.

35. At the time of the hospitalization of plaintiff Petersen as aforesaid, the rates of $58.00 per day for in-patient care and $12.00 per out-patient visit had been established by the Bureau of the Budget for use in connection with the recovery from tortiously liable third persons of the cost of hospitalization and medical care and treatment furnished by the United States, as representing the reasonable value of such hospitalization and medical care and treatment. 35 Fed.Reg. 10531 (June 27, 1970).

36. On the first day of trial, it was stipulated upon the record by the parties that in the event the Court should find defendant Head Construction Company liable to plaintiff Petersen for and on account of the matters set forth in the complaint, said defendant would be liable in damages to intervenor-plaintiff United States of America in the total sum of $1,307.55, consisting of the following amounts, to-wit:

In-patient medical and surgical care and treatment, Bethesda Naval Hospital, 20 days at $58.00 per day ............$1,160.00

Out-patient visits, Bethesda Naval Hospital, 4 visits at $12.00 each ............ 48.00

Emergency treatment, George Washington University Hospital ................ 99.55

$1,307.55

## Conclusions of Law

1. This action is within the admiralty jurisdiction of this Court, 28 U.S.C. § 1333, arising out of a collision on the navigable waters of the Potomac River.

2. Navigation of the navigable waters of the United States is governed by Title 33 of the United States Code as well as various local statutes and regulations, custom and the general requirements of good seamanship and due care consistent therewith.

3. Consistent with Finding of Fact 7, *supra,* the Court concludes that the accident in question occurred on the navigable waters of the United States and that consequently the above-mentioned rules of navigation apply in full force thereto.

4. The rules of navigation specifically applicable to the Potomac River include the Inland Rules of the Road, 33 U.S.C. §§ 151–232, the Pilot Rules for Inland Waters, 33 C.F.R. §§ 80.01–80.45, the rules governing the Protection of Navigable Waters and Harbor and River Improvements, 33 U.S.C. §§ 401–419, and the District of Columbia Harbor Regulations, D.C.Code § 22–1701 et seq.

*Obstruction of Navigable Waters*

■ 5. Particularly pertinent to the action at bar is 33 U.S.C. § 409 which relates to the obstruction of navigable waters. This rule prohibits, inter alia, the tying up or anchoring of "vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft."

6. The Court finds that the defendant in mooring its barge at the location and in the manner described in the above Findings of Fact violated 33 U.S. C. § 409.

■ 7. Also pertinent to the question of unlawful obstruction of navigable waters is the Harbor Regulations of the D.C.Code, 22 D.C.Code § 1701. This provision requires, inter alia, that a vessel moored under the circumstances of this case be secured so as to "keep the long axis of the vessel parallel with that of the channel."

8. The Court concludes, based on Findings of Fact 6, 8 and 16, that the defendant failed to meet this requirement and thus at the time of this accident was in violation of 22 D.C.Code § 1701.

9. The Court notes that it is generally unlawful to "in any manner . . . alter or modify the course, location, condition or capacity . . . of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of Army prior to beginning same." 33 U. S.C. § 403.

10. The Pilot Rules for Inland Waters, 33 C.F.R. §§ 80.01–80.45 further amplify this general requirement:

If it is necessary to prohibit or limit the anchorage or movement of ves-

sels within certain areas in order to facilitate the work of improvement, application should be made through official channels for establishment by the Secretary of the Army of special or temporary regulations for this purpose. (33 C.F.R. § 80.31)

11. The thrust of these rules is that some type of exemption or authorization should have been sought by the defendant from the Corps of Engineers or Secretary of the Army as a prerequisite to mooring its barge under the circumstances herein described. The defendant's failure to obtain such permission (see Findings of Fact 17–20) constitutes a violation of 33 U.S.C. § 403 and 33 C.F.R. § 80.31.

### Lighting of the Barge

12. Article 11 of the Inland Rules, 33 U.S.C. § 180, provides that a vessel under 150 feet in length when at anchor shall carry forward, where it can best be seen, a white lantern so constructed as to show a clear, uniform, and unbroken light visible all around the horizon at a distance of at least two miles. The Court is cognizant of the fact that this provision by its terms applies to "anchored" vessels and that the vessel in question here was moored. Under the circumstances of this case, however, the Court finds that the intent of this provision was to establish a safety standard applicable to vessels occupying a stationary position in navigable channels.

13. Since the location and circumstances of defendant's barge fits within the intended scope of this safety requirement, defendant was in violation of 33 U.S.C. § 180, notwithstanding the fact that defendant's barge was technically moored rather than anchored.

14. In addition, section 80.22(b) of the Pilot Rules, 33 C.F.R. § 80.22(b), requires that moored vessels engaged in various types of construction display three red lights mounted in a vertical line, three to six feet apart, positioned where they can be seen from all directions, with the lowermost light not less than 15 feet above the deck. Furthermore, these lights are required to be vis-

ible for a distance of at least two miles. 33 C.F.R. § 80.24(a).

15. As is noted in the Court's Finding of Fact 10, the defendant's barge was equipped only with yellow cautionary road lights which did not satisfy the applicable provision of 33 C.F.R. § 80.22(b). Defendant's reliance on custom to justify its sole use of yellow cautionary lights is misplaced because the custom relied on, even if established as a matter of fact, is unavailing when the particular custom is contrary to explicit law as is the case here. Gilmore and Black, The Law of Admiralty §§ 7–3, 7–13; Petition of H & H Wheel Service, 219 F.2d 904, 915 (6th Cir. 1955).

### The Pennsylvania Rule

16. The preceding specific violations of statutory law, Conclusions of Law 5–15, cast the burden upon the defendant to demonstrate that these violations could not have been one of the causes of the collision in question in order to relieve itself of liability. The Pennsylvania v. Troop, 86 U.S. [19 Wall.] 125, 22 L.Ed. 148 (1874). The Court finds as a matter of law that the defendant has failed to meet this burden.

17. Defendant's improper mooring of the barge in violation of 33 U.S.C. § 409, 22 D.C.Code § 1701, 33 U.S.C. § 403, and 33 C.F.R. § 80.31, under the Pennsylvania Rule, could have contributed to the collision and therefore the defendant is liable. See Otto Marmet Coal & Min. Co. v. Fieger-Austin Dredg. Co., 259 F. 435 (6th Cir. 1919); The Mattina, 137 F.Supp. 472 (E.D.N.Y.1956); Socony Vacuum Transp. Co., 93 F.Supp. 718 (S.D.N.Y.1950).

18. Defendant's failure to display proper lights in violation of 33 U.S.C. § 180 and 33 C.F.R. § 80.22(b) is also statutory fault which involves the Pennsylvania Rule. See American Dredging Co. v. Calmar S. S. Corp., 121 F.Supp. 255 (E.D.Pa.1954), aff'd per curiam, 218 F.2d 823 (3rd Cir. 1955); Chevron Oil Company v. M/V New Yorker, 297 F.Supp. 412 (E.D.La.1969). This improper lighting also could have

contributed to the collision and therefore the defendant is liable on this basis as well.

### Plaintiff Petersen's Negligence

■ 19. The Court concludes that Petersen's excessive and immoderate speed as found in Finding of Fact 14 was in violation of the General Prudential Rule of Navigation, Article 29 of the Inland Rules, 33 U.S.C. § 221. This lack of caution on Petersen's part constituted fault amounting to negligence and makes Petersen jointly liable with defendant Head Construction.

■ 20. Plaintiff Petersen's failure to keep a proper lookout, Finding of Fact 15, was also a violation of 33 U.S. C. § 221 and is a second and alternative basis for the Court's finding of fault with respect to Petersen.

### Damages

■ 21. Plaintiff Petersen, a professional musician at the time of the injury and now no longer able to perform as a musician, is entitled to a damage award for impairment of his future earning capacity. The proper measure of that impairment is determined to be the difference between his Navy salary and an approximate mean salary of a professional trumpeter. Based upon plaintiff's working life expectancy, that amount, reduced to present value, equals $85,280.72. See Findings of Fact 30–32, *supra.*

■ 22. Plaintiff Petersen is also entitled to a damage award for his permanent anatomical change resulting in his loss of musical ability as a trumpet player. As a consequence of this permanent injury, plaintiff Petersen will be denied the pleasure, enjoyment and achievement of his profession for the remainder of his life. The reasonable value of this loss is $50,000.00.

■ 23. Petersen is entitled to an award of damages for pain, suffering and discomfort sustained as a result of the accident and injury. The Court determines $20,000.00 to be reasonable compensation for same.

■ 24. Plaintiff Schickram is entitled to a damage award for his special damages and anticipated future medical damages of $1,016.55.

25. Schickram is also entitled to an award of $2,000.00 as reasonable compensation for his pain and suffering.

26. Schickram is entitled to an award of $3,000 for the permanent disfigurement he suffered as a result of this accident.

■ 27. The intervenor-plaintiff, United States of America, by virtue of the Federal Medical Care Recovery Act, 42 U.S.C. §§ 2651–2653, has the right to recover the reasonable value of hospitalization and medical-surgical care and treatment furnished to·plaintiff Petersen as a result of his injuries against a third party to the extent that such third party is liable for those injuries.

28. The reasonable value of hospitalization and medical-surgical care and treatment furnished by the United States is conclusively measured by the rates established by the Bureau of the Budget. Phillips v. Trame, 252 F.Supp. 948, 951 (E.D.Ill.1966). In the instant case the reasonable value equals $1,307.-55.

### The Rule of Divided Damages

■ 29. Having found both the plaintiff Petersen and the defendant Head Construction Company at fault, the doctrine of mutual fault and divided damages applies to this case. Gilmore and Black, The Law of Admiralty, §§ 7–4 and 7–18; The Catharine v. Dickinson, 58 U.S. (17 How.) 170, 15 L.Ed. 233 (1855).

30. Based on this principle, the total damages sustained by Petersen will be apportioned equally between Petersen and the defendant Head Construction Company so that each will bear one-half of the total.

An appropriate order has this day been entered.