Gerald P. **GARRETT,** Plaintiff-Appellee,

v.

C.C. **HIGGENBOTHAM,** Jr.,
**Defendant-Appellant.**

No. 85–8816.

United States Court of Appeals,
Eleventh Circuit.

Oct. 6, 1986.

John J. Ossick, Jr., Kingsland, Ga., for plaintiff-appellee.

J. Thomas Whelchel, Brunswick, Ga., for defendant-appellant.

Before VANCE and EDMONDSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

EDMONDSON, Circuit Judge:

The sole issue in this appeal is whether the trial court misapplied relevant maritime law in holding defendant-appellant C.C. Higgenbotham liable for the damages resulting from a collision between his vessel and the sailboat of plaintiff-appellee Gerald P. Garrett. Because we find that the district court relied on an inapplicable statute and a pivotal issue of fact remains undecided, we must VACATE the district court's judgment and REMAND the case for further proceedings.

The collision in question occurred in St. Andrews Sound on the Georgia coast, within the inland waters of the United States. The 27 foot sailboat was outbound to Bermuda and under power of sail; Higgenbotham was inbound to Woodbine, Georgia, in his 73 foot motor-powered shrimp trawler. The shrimper was proceeding in a marked channel in the sound—a channel it may have been forced to use given the draft of the vessel. It is undisputed that neither weather nor visibility played a part in the crash and that the sailboat was observed by the crew of the shrimper while the two were approximately one mile apart. Garrett's sailboat collided with the shrimper's outrigger, which was down even though the vessel was not fishing at the time.[1]

To determine liability, the United States District Court for the Southern District of Georgia had to decide which vessel was required to yield right-of-way as a matter of maritime law. That issue is resolvable by applying several relevant statutes, all of which are found in the Inland Navigational Rules Act of 1980. 33 U.S.C.A. §§ 2001–38 (the INRA). The INRA is a unified set of 38 navigational rules closely patterned after the 38 international navigational rules known as the "72 Colregs."[2]

A basic premise of maritime right-of-way is that "a power-driven vessel underway shall keep out of the way of ... a sailing vessel." 33 U.S.C.A. § 2018(a)(iv); see Linehan v. United States Lines, Inc., 417 F.Supp. 678, 692 (D.Del.1976). This rule is subject only to the three exceptions found at 33 U.S.C.A. §§ 2009, 2010, 2013.[3] Neither § 2010 nor § 2013 are potentially applicable in this case; § 2009(b) may apply, however. That statute states that a sailing vessel "shall not impede the passage of a vessel that can safely navigate only within a narrow channel or fairway." Another section of the INRA provides that "a vessel restricted in her ability to maneuver ... shall exhibit [a particular signal]." 33 U.S.C.A. § 2027(b).

The district court considered these statutes to be applicable and held that Garrett's sailboat

had the right of way unless the shrimp trawler ... was in an area where it could not safely navigate because of a narrow channel. If Higgenbotham was operating in a narrow channel where he could not maneuver safely, it was incumbent upon him to exhibit a signal which would show that his vessel was restricted in its ability to maneuver.

---

\* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. The shrimper was inbound with the day's catch on board.

2. The INRA was enacted to unify the various navigational rules in the United States. 1980 U.S. Code Cong. & Ad. News 7068–69. This statutory unification was delayed, however, until a 1972 international convention enacted a unified set of international navigational rules, commonly referred to as the "72 Colregs." Id. at 7069. The 72 Colregs are attached as Appendix A to 33 CFR Part 81.

3. 33 U.S.C. § 2018 specifically states that these sections provide the sole exceptions.

The logic of this view is attractive; but to the extent this holding purports to be an application of § 2027(b), it is in error.

■ Section 2027(b) does require a vessel "restricted in her ability to maneuver" to display a particular signal; the trawler did claim to be restricted in its navigability; and the trawler did not display the signal required. Nevertheless, the term "vessel restricted in her ability to maneuver" is a term of art that has been defined by Congress in a specific way. In the context of the INRA, the phrase means a vessel *"which from the nature of its work* is restricted in her ability to maneuver as required by [the INRA] rules." 33 U.S.C.A. § 2003(g) (emphasis added).[4] Reason might suggest that any vessel whose maneuverability is impaired—regardless of the cause of impairment—should be statutorily required to display the appropriate warning signal. Nevertheless, from the wording of the INRA, Congress apparently intended otherwise; and we shall not engraft other views on the statute in the face of this specific enactment.

■ Our reluctance to indulge in judicial innovation as part of statutory interpretation is heightened by the nature of the INRA, itself. The INRA is an elaborate and sophisticated network of interlocking, technical, statutory regulations governing waterborne traffic generally. Moreover, it is based, in large part, on a similar body of international regulations. Evidently, much time, energy and expert thought was invested in the INRA's development by Congress. Especially in light of the history, courts ought to be extremely slow to tamper with this sensitive, regulatory system. This is true even if it seems reasonable, in the context of an isolated case, to extend a definition, such as, that of "vessel restrict-

ed in her ability to maneuver," to require signal lights or flags when the statute has not done so. Acting as we must on a case-by-case basis, we are ill prepared to know what the consequences of such innovation might be for the regulatory system and for waterborne traffic in general.

■ A crucial remaining question, then, is whether the shrimper qualifies for the "narrow channel" exception, 33 U.S.C.A. § 2009(b), to the general rule that power-driven vessels must give way to sailboats. 33 U.S.C.A. § 2018(a)(iv). The term "narrow channel" is not defined in the INRA; "accordingly, application of [§ 2009] has been left to the courts." *Canal Barge Co. v. China Ocean Shipping Co.,* 770 F.2d 1357, 1362 (5th Cir.1985). Section 2009, however, has not as yet been interpreted and applied by the courts. *Id.* Nevertheless, it was well-established case law under § 2009's predecessor[5] that whether a channel is "narrow" is a mixed question of fact and law, *id.;* as such, this issue is one we are poorly situated to decide in the first instance. We therefore must remand the case to the district court.

■ On remand the district court may not apply § 2009(b) unless it first finds that the channel was "narrow" in a legal sense. Even if the district court finds both that the shrimper was a vessel that could navigate safely only within a narrow channel and that the channel was narrow, the shrimper may still be liable unless it would have been forced to take an unreasonable risk of leaving the safety of the channel to avoid the collision. *Linehan v. United States Lines, Inc.,* 417 F.Supp. 678, 692 & n. 29 (D.Del.1976) ("The sailcraft must only give the steamer sufficient breadth to remain in the channel while [the steamer]

4. Furthermore, all six examples provided in § 2003(g) involve vessels whose work activities restrict their maneuverability.

5. Section 2009 closely tracks Rule 25 of the now-defunct Inland Rules. Until repealed by the INRA, Rule 25 was codified at 33 U.S.C.A. § 210 (1966). Application of Rule 25 was based on the physical dimensions of the water, the physical characteristics of the vessel in question

and the navigational characteristics of the river. *Weathers Towing, Inc. v. M/V HERMAN POTT,* 570 F.2d 1294, 1295 (5th Cir.1978); *Flowers Transportation, Inc. v. American River Transportation Co.,* 485 F.Supp. 731, 739–40 (N.D. Miss.1980); *see Philip Offshore Towing Co. v. Wisconsin Barge Lines, Inc.,* 466 F.Supp. 403, 410 (E.D.La.1979) (channel 1,000 to 1,200 feet wide not "narrow").

takes the action necessary to avoid collision.").

We stress, however, the limited nature of our decision and the broad latitude available to the district court and both parties on remand. We anticipate that the trial court will require additional evidence before it can resolve this case. If so, our decision does not preclude the parties from seeking to establish before the district court any other facts relevant to determining the liability for the collision.[6] We decide only that the specific signals required by 33 U.S.C.A. § 2027(b) are applicable solely to a vessel whose maneuverability is restricted by the nature of her work, *see id.* § 2003(g), and a judgment based on 33 U.S.C.A. § 2027(b) was not justified in this case.[7]

VACATED and REMANDED for further proceedings in accord with this opinion.

---

6. For example, "even without a specific, demonstrable violation of the Rules, liability can be imposed where negligence is found." *Movible Offshore, Inc. v. M/V WILKEN A. FALGOUT,* 471 F.2d 268, 274 (5th Cir.1973). Thus, the facts may demonstrate that the shrimper should be held liable for negligently failing to give some kind of warning that her maneuverability was impaired even though she was not required to display the specific signal provided in 33 U.S.C.A. § 2027(b). *See United States v. Woodbury,* 175 F.2d 854, 861–62 (1st Cir.1949) (even though fishing boat was technically correct in failing to signal, it nevertheless was negligent in not signaling under the circumstances). This concept derives from 33 U.S.C.A. § 2002(a) (formerly 33 U.S.C.A. § 221).

Section 2002(a), although broadly worded, is not broadly applied. Gilmore & Black, The Law of Admiralty 508–11 (2d ed. 1975). The clear general rule is that the navigational rules are "rigorously enforced" and strictly interpreted. *Belden v. Chase,* 150 U.S. 674, 698, 14 S.Ct. 264, 271, 37 L.Ed. 1218 (1893); Gilmore & Black at 489. Thus, "obedience to the rules is not a fault, even if a different course would have prevented the collision.... Masters are bound to obey the rules, and entitled to rely on the assumption that they will be obeyed...." *Belden,* 150 U.S. at 699, 14 S.Ct. at 272.

7. As a final point, if the district court finds that the shrimper was not a vessel restricted to a narrow channel, 33 U.S.C.A. § 2009(b), Higgenbotham cannot argue that the size or nature of his shrimp trawler nevertheless somehow relieved him of his obligation to yield the right-of-way to the sailboat.

Rule 18 of the 72 Colregs, which parallels 33 U.S.C. § 2018, included a provision directing vessels not to impede a vessel "constrained by her draft." 1972 Colregs 18(d) at 33 C.F.R. Part 81 Appendix A. Because Rule 18(d) "does not assign a right-of-way to the constrained vessel," Congress specifically chose not to include subsection (d) in 33 U.S.C. § 2018, reasoning that "such a subjective rule might lead to abuses and result in a situation wherein a vessel considering herself constrained by her draft claims a right of way to which she is not entitled, thereby creating a dangerous situation." 1980 U.S. Code Cong. & Ad. News 7081.