SELF TOWING, INC., KJI, Inc.,
Plaintiffs–Appellees,

v.

BROWN MARINE SERVICES, INC.,
Defendant–Appellant,
Cross–Appellee,

Employers Insurance of Wausau,
Intervenor, Cross–Appellant.

No. 87–7031.

United States Court of Appeals,
Eleventh Circuit.

Feb. 22, 1988.

James W. Tarlton, III, Hamilton, Butler, Riddick, Tarlton & Sullivan, P.C., and David A. Boyett, III, Mobile, Ala., for Brown Marine.

J. Hodge Alves, III, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for Employers Ins.

Barry Gordon Terranova, Terranova and Seelman, Mobile, Ala., plaintiffs-appellees.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and PECK *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

In this admiralty case involving a collision on inland waters, Brown Marine Services, Inc., appeals (1) the determination by the United States District Court for the Southern District of Alabama that Brown Marine's tug was the sole proximate cause of the collision and (2) the amount of damages awarded by the district court to the appellees, 651 F.Supp. 187. Employers Insurance of Wausau, Self Towing, Inc.'s insurance company, cross appeals the amount of damages the district court awarded it. We affirm as to the liability issue and reverse and remand as to both of the damages claims.

I.

M/V BLACK JACK, a tugboat, was owned by KJI, Inc., and was under bare-

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designa-

boat charter to Self Towing.[1] BLACK JACK and her tow were moored at a shell unloading site along the North bank at or near mile 271 of the Gulf Intracoastal Waterway. The site is approximately 300 feet west of the West Bay Bridge, a lift drawbridge located in West Bay, Florida. The bridge opening is approximately 86 feet wide and is located in the middle of the 125-foot channel. The channel runs straight through the bridge opening.

Although the day was clear when BLACK JACK's tow began unloading, a dense fog night eventually enshrouded the site. M/V ERNEST H. DOSS, Brown Marine's tugboat, was traveling through the West Bay Bridge and pushed the first of its tow, an empty oil barge, into BLACK JACK.

BLACK JACK was declared a constructive total loss pursuant to a hull insurance policy between Self Towing and Wausau. Self Towing then sued Brown Marine and Wausau intervened. The district court found DOSS's actions to be "the proximate cause" of the collision, and awarded damages. This appeal and cross-appeal followed.

## II.

### A. *Liability*

■ It is a well-established rule that a moving vessel which strikes a stationary vessel is presumed to be at fault and has the burden of proving otherwise. *See, e.g., The Oregon,* 158 U.S. 186, 197, 15 S.Ct. 804, 809, 39 L.Ed. 943 (1895); *Mount Washington Tanker Co. v. Wahyuen Shipping, Inc.,* 833 F.2d 1541, 1542 (11th Cir.1987). Brown Marine's DOSS thus is presumed at fault for hitting the moored BLACK JACK.

---

tion.

**1.** Under the law of admiralty, a bareboat charterer is entitled to claim the same damages as an owner of the vessel could have claimed under like circumstances.

**2.** *The Pennsylvania* rule places the burden on the party violating the statute. The district court, in one part of its opinion, held that "Brown Marine did not prove that the plaintiffs, if they committed any statutory violations,

It is similarly well established under *The Pennsylvania* rule that "when ... a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, ... the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute." *The Pennsylvania,* 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148 (1874).

In the present case, the district court found that in light of the restricted visibility from the dense fog, DOSS's failure to maintain a proper lookout violated 33 U.S.C.A. § 2005. Similarly, the district court found the actions by DOSS's captain in proceeding without a lookout and without ascertaining the existence of lights in an area he knew was used to unload materials violated 33 U.S.C.A. § 2007(a). Brown Marine does not challenge these findings and conclusions. Rather, although admitting DOSS was *a* cause of the collision, Brown Marine disputes the district court's determination that DOSS was *the* cause of the collision.

Brown Marine argues that BLACK JACK violated various statutory provisions and thus Self Towing was under an obligation to prove that these violations could not have been *a* cause of the collision.[2] The district court expressly and implicitly rejected each of Brown Marine's affirmative defenses. We affirm.

### 1. *Navigable Channel Obstruction*

■ Brown Marine raised an affirmative defense that BLACK JACK violated 33

---

caused the collision." 651 F.Supp. at 192. Brown Marine is correct that the district court erred in this statement; the burden was on Self Towing. The error, however, is harmless. The district court applied *The Pennsylvania* rule only once and applied it properly, *see id.* at 191–92, although it stated the conclusion incorrectly. In addition, we have no need to resort to *The Pennsylvania* rule because we conclude BLACK JACK violated no statutory provisions.

U.S.C.A. § 409,[3] 33 U.S.C.A. § 2009(g),[4] and 33 C.F.R. § 162.75(b)(3)(i).[5] The touchstone for a violation under these three provisions is that the offending vessel obstructed the passage of another vessel.[6] Brown Marine argues that the district court erred in finding that "[t]he plaintiffs' flotilla was not moored or made up in the channel in such a fashion so as to obstruct the channel." *See* 651 F.Supp. at 188.

We examine whether this finding was clearly erroneous. *Harbor Tug & Barge, Inc. v. Belcher Towing Co.*, 733 F.2d 823, 825 (11th Cir.1984). "Whether ... [a] mooring constitutes an obstruction to navigation is to be determined by reference to all the relevant facts and circumstances...." *Orange Beach Water, Sewer and Fire Protection Auth. v. M/V ALVA*, 680 F.2d 1374, 1380 (11th Cir.1982). Our review of the record convinces us that the district court's finding was not clearly erroneous.

### 2. *All–Round Lights*

■ Brown Marine raised an affirmative defense that BLACK JACK violated 33 U.S.C.A. § 2030. Section 2030 requires "a vessel at anchor" to display all-round lights. BLACK JACK, while moored, did not display all-round lights.

Self–Towing countered that Section 2030 does not apply to moored vessels. We agree.[7] In *Garrett v. Higgenbotham*, 800 F.2d 1537, 1539 (11th Cir.1986), this Court insisted on a strict construction of the Inland Navigational Rules Act of 1980:

> The INRA is an elaborate and sophisticated network of interlocking, technical, statutory regulations governing waterborne traffic generally. Moreover, it is based, in large part, on a similar body of international regulations.... Especially in light of the history, courts ought to be extremely slow to tamper with this sensitive, regulatory system. This is true even if it seems reasonable, in the context of an isolated case ... to require [safety devices] when the statute has not done so.

Section 2030 by its express terms applies to a "vessel at anchor." Because "vessel at anchor" and "moored vessel" are not

---

**3.** Section 409 provides in relevant part that "[i]t shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft...."

**4.** Section 2009(g) provides that "[e]very vessel shall, if the circumstances of the case admit, avoid anchoring in a narrow channel."

**5.** Section 162.75(b)(3)(i) provides in relevant part that
[v]essels or tows shall not anchor or moor in any of the land cuts or other narrow parts of the waterway, except in an emergency, or with permission of the District Commander.... This shall be done only at such a place and under such conditions as will not obstruct or prevent the passage of other vessels or tows.

**6.** Although the language of 33 U.S.C.A. § 2009(g) does not make this requirement explicit, § 2009(g)'s legislative history makes clear that obstruction is a prerequisite for liability. *See* S.Rep. No. 979, 96th Cong., 2d Sess. 11 (quoting 33 U.S.C.A. § 409), *reprinted in* 1980 U.S.Code Cong. & Admin.News 7068, 7078.

**7.** Alternatively, we note that the district court expressly did not address whether BLACK JACK violated the statute. Rather, the district court

expressly held that the absence of the lights was not a cause of the collision. *See* 651 F.Supp. at 191–92. Consequently, the district court held that BLACK JACK met its burden under *The Pennsylvania* rule. Although *The Pennsylvania* rule places a heavy burden of proof on BLACK JACK, our review of the record convinces us that the district court's finding was not clearly erroneous. The DOSS's captain admitted that lights he saw could be from someone unloading on the North bank. The DOSS's captain, having navigated the Intracoastal Waterway for 15 years, was aware that the area was used as an unloading site. The DOSS's captain still proceeded ahead. In light of these facts, the district court's finding was not clearly erroneous. *See Socony–Vacuum Oil Co. v. Smith*, 179 F.2d 672, 675 (5th Cir.1950) (improper lighting scheme "could not, under the facts of this case, reasonably be regarded as contributing to the collision, even though the burden of establishing this was on the [violating] tow"); *see also Rosado v. Pilot Boat No. 1*, 304 F.Supp. 49, 53 (D.P.R.1969) ("Here is a situation where the display of proper lights could not have prevented the accident.... The omission of proper lights will be disregarded as an element of fault where their display quite obviously could not have prevented the accident.").

synonymous terms of art,[8] we hold that Section 2030 does not apply to moored vessels. *See Dahlmer v. Bay State Dredging & Contracting Co.*, 26 F.2d 603, 605 (1st Cir.1928) (The First Circuit held that 33 U.S.C.A. § 180, Section 2030's predecessor, did not apply to moored vessels: "We cannot sustain the contention that a moored vessel is subject to the same rules, relating to lights, as those applying to an anchored vessel. It is the doctrine of the courts that no analogy can be drawn between anchored vessels and moored vessels in this connection."). In addition, we discern from the legislative history associated with Congress's recodification of Section 180 to Section 2030 in 1980 that Section 2030 does not apply to moored vessels. *See* S.Rep. No. 979, 96th Cong., 2d Sess. 22, *reprinted in* 1980 U.S. Code Cong. & Admin. News 7068, 7089 ("Anchored vessels do not include barges moored to a bank or dock. Lights for these vessels may be included in the to-be-developed Pilot Rules of Annex V.").[9]

### 3. *Ringing Bell During Fog*

■ Brown Marine also raised an affirmative defense that BLACK JACK violated 33 U.S.C.A. § 2035(f), which provides that in or near an area of restricted visibility "[a] vessel at anchor shall at intervals of not more than 1 minute ring the bell rapidly for about 5 seconds."[10] BLACK JACK

never rang the bell. Because *Garrett* requires strict construction of the language of any Inland Navigational Rule, we conclude that, although Section 2035(f) applies to a vessel at anchor, it does not apply to a moored vessel.[11] *See Pennsylvania R.R. v. Central R.R.*, 103 F.2d 428, 429 (2d Cir.), *cert. denied*, 308 U.S. 591, 60 S.Ct. 121, 84 L.Ed. 495 (1939).

### 4. *Monitoring Radio Communications*

■ Brown Marine raised the affirmative defense that BLACK JACK failed to monitor radio communications as required by the Vessel Bridge-to-Bridge Radiotelephonic Act, 33 U.S.C.A. §§ 1201–1208.[12] Brown Marine seeks to ground its defense in 33 U.S.C.A. § 1203(a)(4), which provides that the Act applies to "every dredge and *floating plant* engaged in or near a channel or fairway in operations likely to restrict or affect navigation of other vessels." Brown Marine argues that BLACK JACK falls within the definition of floating plant. We cannot agree that BLACK JACK fits within the definition of "floating plant" we borrow from 33 C.F.R. § 161.103 (" 'Floating Plant' means any vessel, other than a vessel underway and making way, engaged in any construction, manufacturing, or exploration operation, and which may restrict the navigation of other ves-

---

**8.** A mooring is a permanent location to which a vessel ties and thus moored vessels are located in an expected place. In contrast, an anchorage is a temporary location, often occurring in the travelled way, and thus anchored vessels are not located in expected places. *See O'Shaughnessy v. Besse*, 7 Mass.App. 727, 389 N.E.2d 1049 (1979).

**9.** This statement in the legislative history implicitly disapproved of the holding in *Petersen v. Head Construction Co.*, 367 F.Supp. 1072, 1079 (D.D.C.1973). There, the district court held Section 180 applicable to a moored barge, "notwithstanding the fact that the defendant's barge was technically moored rather than anchored." *Id.*

**10.** Brown Marine also contended that BLACK JACK violated § 2035(c), which applies to a "vessel not under command." Brown Marine's reliance on this subsection is misplaced. A "vessel not under command" is a term of art and is defined as "a vessel which through some

exceptional circumstance is unable to maneuver as required by these Rules and is therefore unable to keep out of the way of another vessel." 33 U.S.C.A. § 2003(f). The moored BLACK JACK does not fit within this definition.

**11.** The district court made no express findings of fact or conclusions of law regarding this defense. By stating that DOSS was "the proximate cause" of the collision, however, the district court implicitly rejected this defense.

**12.** As with Brown Marine's defense raised under Section 2035(f), the district court made no express findings of fact or conclusions of law regarding this defense.

We note that the Act applies, in relevant part, to "every towing vessel of twenty-six feet or over in length *while navigating*." 33 U.S.C.A. § 1203(a)(3) (emphasis added). This subsection does not apply to the present case because the BLACK JACK was moored; it was not navigating.

sels.").[13]

### B. *Amount of Damages Awarded*

■ The district court found that BLACK JACK had a fair market value of $225,000. The district court also noted that BLACK JACK was insured for $70,000 pursuant to a hull policy between Self Towing and Wausau. Finally, the district court noted that Wausau received two repair bids, one for $70,854.16 and the other for $98,000. Because repair costs exceeded the insured value, the district court awarded damages equal to BLACK JACK's market value. The district court awarded Self Towing $155,000 and awarded Wausau $70,000 because Wausau had already paid that amount to Self Towing pursuant to their hull insurance policy.[14]

Brown Marine contends the district court erred in the amount of damages awarded. We agree that the district court confused the concept of constructive total loss for *insurance* purposes with the concept of constructive total loss for *tort damages* purposes.

Insurance policies frequently provide that a vessel is declared a constructive total loss when repair costs exceed the *insured value.* The rule for tort damages, however, differs: "The legal principles are well settled: A vessel is considered a constructive total loss when the cost of repairs is greater than the *fair market value of the vessel immediately before the casualty." Ryan Walsh Stevedoring Co. v.* *James Marine Services, Inc.,* 792 F.2d 489, 491 (5th Cir.1986). In the present case, the repair bids [15] are far less than the $225,000 fair market value. Consequently, we conclude that the district court erred in its method of determining damages and we remand for the district court to determine damages pursuant to the correct legal standard.[16]

### C. *Damages Awarded to Wausau*

■ When Self Towing sued Brown Marine, Wausau intervened as Self Towing's insurance company. If Self Towing successfully sued Brown Marine, Wausau sought subrogation for its expenses connected with Self Towing's claim under the insurance policy. All parties stipulated that Wausau was entitled to an award equal to the amount set forth in Intervenor's Exhibit 11.

In its initial judgment, the district court awarded Self Towing $225,000 without addressing Wausau's claims. The district court then entered a second judgment in favor of Wausau for $70,000, thereby reducing Self Towing's recovery to $155,000. The district court awarded Wausau $70,000 because the insurance policy required Wausau to pay that amount to Self Towing for BLACK JACK's hull damage.

Wausau cross appeals the amount of damages awarded it by the district court. We agree with Wausau that the district court did not tailor its award according to the stipulated amount set forth in Exhibit

---

**13.** Nothing in Section 1203(a)(4)'s legislative history suggests this definition is incorrect. *See generally* H.R.Rep. No. 346, 92d Cong., 1st Sess., *reprinted in* 1971 U.S.Code Cong. & Admin. News 1237.

Brown Marine also claims that BLACK JACK violated 33 U.S.C.A. § 2002, the "general prudential" catch-all rule. BLACK JACK complied with statutory requirements and no special circumstances exist to suggest imposing liability on BLACK JACK under this catch-all rule.

**14.** Wausau admitted in its cross-appellant brief that this figure is in error. The district court did not deduct the $13,510 that Wausau received from Black Jack's salvage. Wausau submitted a notice of remittitur to receive a judgment based upon a base claim of $62,890.20. In part II(C), *infra,* we examine the amount of damages awarded to Wausau.

**15.** Although the repair bids do not include any cost to repair possible damage to the engines, the district court specifically noted that there was a lack of evidence concerning the condition of BLACK JACK's engines. *See* 651 F.Supp. at 190.

**16.** Self Towing seeks to uphold the district court's award by arguing that the district court used a "diminution of value" theory. Self Towing argues that the district court could not determine the cost of repairs and thus referred to the diminution of BLACK JACK's value. This argument is without merit. The clear import of the district court's decision is that the repair bids represented the only repair costs proven to the district court, and that the proven repair costs exceeded BLACK JACK's insured value.

11. Consequently, on remand, the district court must so tailor its award.

Accordingly, AFFIRMED in part, and REVERSED and REMANDED in part.