[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 24, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-16691
Non-Argument Calendar

_____

D. C. Docket No. 00-00218-CV-T-27-F

SUNDERLAND MARINE MUTUAL INSURANCE COMPANY, LTD.,

CERTAIN UNDERWRITERS AT LLOYDS,
Subscribing to Policy Number
97-HV123/HV126, as their
interests may appear,

Plaintiffs-Appellees,

versus

WEEKS MARINE CONSTRUCTION COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 24, 2003)**

Before CARNES, WILSON and GODBOLD, Circuit Judges.

PER CURIAM:

This case arises from the allision of two vessels. Sunderland Marine Mutual Insurance Company, Ltd. and Certain Underwriters at Lloyd's brought suit in admiralty against Weeks Marine Inc. The district court sitting without a jury found that both vessels equally contributed to the allision and apportioned the damages accordingly. Weeks now appeals, alleging that it did not contribute to the allision for it was not in violation of Navigational Rules. Alternatively, Weeks says that even if it was at fault, the district court erred in apportioning damages equally between the parties. We affirm the judgment of the district court.

The appellees shrimp boat was caught in a fog en route to a fishing trip. The captain, who had a trace of cocaine in his system, negligently took the wrong marker setting course towards Edmont Key. The appellant, in connection with its dredging project, had used a mooring buoy to anchor an unlit barge in open water, outside Edmont Key's channel. The appellees' boat allided with the barge. The allision caused a crack in the boat, causing the boat to eventually sink. The appellees sued for damages. The district court found both parties negligent and apportioned the damages accordingly. The appellant now appeals.

The district court's legal conclusions are subject to de novo review. Newell v. Prudential Ins. Co. of Am., 904 F.2d 644, 649 (11th Cir. 1990) but the district

2

court's factual findings will not be disturbed unless they are clearly erroneous. American Dredging Co. v. Lambert, 153 F.3d 1292, 1295 (11th Cir. 1998).

There are four issues on appeal. Whether the trial court correctly found that the appellant violated the Navigational Rules; whether such violations contributed to the resulting allision; whether the district court correctly apportioned the damages between the parties; and whether the district court properly awarded pre-judgment interest.

### Anchored v. Moored

Anchoring is a subset of mooring. Per Black's Law Dictionary, one can either moor via anchor or moor by making fast to the shore or dock. BLACK'S LAW DICTIONARY 909 (5th Ed. 1979). The traditional distinguishing factor of a moored vessel versus an anchored vessel has been that the former is moored to a permanent object such as a dock or a pier while the anchored vessel is anchored in open water. THE OXFORD COMPANION TO SHIPS & THE SEA 559 (1988). "A mooring is a permanent location to which a vessel ties and thus moored vessels are located in an expected place. In contrast, an anchorage is a temporary location, often occurring in the traveled way, and thus anchored vessels are not located in expected places." Self Towing, Inc. v. Brown Marine Services, Inc., 837 F.2d 1501, 1505 (11th Cir. 1988). The safety requirements for an anchored vessel, thus, are generally higher, for its presence is in unexpected places. Id.

The usage of mooring buoys changes the permanency of traditional mooring. THE OXFORD COMPANION TO SHIPS & THE SEA 119-120 (1988). Generally, the mooring buoy is anchored while the vessel is connected to the mooring buoy via mooring lines. Thus, mooring buoys can be and are located in open water. Id. Since the presence of the mooring buoy and any vessel moored to it is unexpected, the Coast Guard clarified the responsibilities of the vessel operators who moor to mooring buoys and other similar devices by adding interpretive rules to the Inland Navigation Rules. "The interpretative rules are added to ensure that the term vessels at anchor in Rule 30 of the COLREGS and the Inland Rules includes vessels moored to a mooring buoy." 63 F.R. 5728, 5729.

Here, the appellant had secured the barge to the mooring buoy via mooring lines, located in open water. The barge was, therefore, not moored in the traditional sense. It was not connected to a permanent location, such as a dock or a pier, but was located in open water, similar to a traditionally anchored vessel. The district court did not err in finding that the mooring lines extending from the mooring buoy anchored the barge owned by the appellant, and therefore, that the barge was at anchor, subject to the rules applicable to an anchored vessel.

## The Navigational Rules Violated

### *Lighting*

The obligation to display proper lights is firmly established by both domestic and international regulation as part of the law of the sea. John Wheeler Griffin, LL.B., THE AMERICAN LAW OF COLLISION §83 (1949). The basis for this universal requirement is to protect persons and property by enabling vessels to be able to see at night. Waring v. Clare, 46 U.S. 441, 465 (1847). "The extreme blackness of water at night makes any departure from light rules 'one of the most wrecklessly [sic] unlawful acts a vessel can commit.'" Cliffs-Nedrill Turnkey Int'l Oranjestad v. M/T Rich Duke, 947 F.2d 83, 88 (3d Cir. 1991). Failure to comply "shall be proved to exist when injury shall occur to persons or property, it throws upon the master and owner of a steamer the burden of proof, to show that the injury done was not the consequence of it." Waring, 46 U.S. at 465.

The Navigational Rules requiring lights for anchored vessels are 33 U.S.C. §2030 and 33 U.S.C. §2022. 33 U.S.C. §2030 ("Rule 30"), states in pertinent part in subpart (a) that vessels at anchor will display two all-round white lights: one in the fore part and one near the stern. 33 U.S.C. §2022 ("Rule 22"), details the intensity of the lights required for all vessels regardless of whether they are moored or anchored. The level of intensity required changes based on the size of the vessel. §2022.

5

The court correctly found that the appellant violated Rule 30 by failing to equip the anchored barge with the appropriate lights as required by §2030 (a). Moreover, despite repeated warnings, it failed to ensure that the lights with which the barge was equipped were in working order. "The law as to lights is imperative . . . The master, or officer in charge, must *know* that the lights are continually up." The Conoho, 24 Fed. 758, 760 (1885). The district court correctly found that the appellant violated Rule 30.

Further, the appellant violated 33 U.S.C. §2022 (a). The appellant failed to ensure that the barge was equipped with lights that were visible to passersby at the specified intensity. In this case the appellant was required to install lights on the barge that could be seen between approximately six to two miles away pending on the location of the lights. §2022. The district judge did not err in finding that the appellant violated Rule 22.

*Sound*

The Navigational Rules require that vessel at anchor emit sound signals in restricted visibility, whether it is day or night, 33 U.S.C. §2035(f) ("Rule 35"). Both statute and prudence require that in times of fog an anchored vessel ring her bell in accordance with the intervals set out in Rule 35. The appellant's vessel was not sounding as required by Rule 35. In fact, it was not even equipped to make

6

sound during times of inclement weather. The district court was correct in finding that that the appellant had violated Rule 35.

*Obstruction of Navigable Waters*

A vessel may not be placed in navigable waters unless a permit is obtained, 33 U.S.C. §403. Moreover, no vessel may be anchored in navigable channels in such a manner that prevents the safe passage of other vessels, 33 U.S.C. §409. The purpose of these statutes is to preserve safe passage by other vessels. US v. Raven, 500 F.2d 728, 732 (5th Cir. 1974). The issue of "whether an anchorage or mooring constitutes an obstruction to navigation is to be determined by reference to all the relevant facts and circumstances . . . ." Orange Beach Water v. M/V Alva, 680 F.2d 1374, 1380 (11th Cir. 1982). A violation of §409 shifts the burden of proof onto the party who obstructed the navigable waters. Id at 1381.

The district court found that the allision took place within the inland waters in the vicinity of Edgmont Key. The court placed emphasis on the testimony of Matthew Bryce Lester, a Tampa Bay Pilot, that he had found the barge to be a navigational hazard and had previously informed the appellant about its obstruction. The court correctly found that the appellant violated not only 33 U.S.C. §409 but also had failed to prove that such violation did not constitute a navigational hazard.

Additionally, by creating such an obstruction in the navigational water, the

7

appellant was required to obtain a permit. §403. No such permit was obtained. The district court did not err finding that appellant violated 33 U.S.C. §403.

The Navigational Rules Violations Contributed to the Allision

The general rule is that the presumption of fault for the allision lies against the moving vessel. Bunge Corp. v. M/V Furness Bridge, 558 F.2d 790, 795 (5th Cir. 1997). This burden of proof shifts, however, to the stationary vessel when the stationary vessel is in violation of a statutory rule intended to prevent accidents. The stationary vessel then bears the burden of proof in showing that its statutory violation could not have been a contributory cause of the allision. The Pennsylvania, 86 U.S. 125, 136 (1873). The Pennsylvania rule only determines who bears the burden of proof and does not allocate liability. Pennzoil Producing Co., et al., v. Offshore Express, Inc., 943 F.2d 1465, 1472 (5th Cir. 1991).

As aforementioned, the appellant violated four safety statutes regarding location, light and sound. Based on these violations the appellant bore the burden of proving that its violations did not contribute in any way to the allision. The appellant did not meet its burden. The lack of sound and light and the barge's location contributed to the allision. The district court correctly found that the appellees were not the sole cause of the accident.

## Apportioned Damages

The district court may apportion damages between the parties proportionate to their degree of fault. The district court may allocate equally "only when the parties are equally at fault or when it is a not possible fairly to measure the comparative degree of their fault." U.S. v. Reliable Transfer Co., Inc., 421 U.S. 397, 411 (1975). Here, the district court found that the appellant had violated four significant safety statutes, Rule 30, 35, 33 U.S.C. §403 and §409. By finding both parties equally negligent the district court implicitly stated that either both parties were equally at fault or that the comparative fault of each party was not fairly measured. The court did not err in apportioning damages equally between the parties.

## Pre-Judgment Interest

It is the general rule of this circuit to award pre-judgment interest in admiralty cases. Ins. Co. of N. Am. v. M/V Ocean Lynx, 901 F.2d 934, 942 (11th Cir. 1991). In awarding pre-judgment interest the district court does not need to make specific findings. Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540, 1550 (11th Cir. 1987). The "district court's decision on whether to award pre-judgment interest [is reviewed] for abuse of discretion." Ins. Co., 901 F.2d at 942. The rate of pre-judgment interest that should be awarded is the prime rate during the relevant period. First Nat'l Bank of Chicago v. Standard Bank & Trust, 172

9

F.3d 472, 480 (7th Cir. 1999) (unless the rate is statutorily defined, the district court is bound to award prime interest rate, anything other will be an abuse of discretion); The Ohio River Co. v. Peavey Co., 731 F.2d 547, 549 (8th Cir. 1984) (the interest should be the average prime rate during the relevant period of injury).

The district court awarded the appellees pre-judgment interest at the prevailing rate per annum from the date of the allision. It correctly found that the rate would be the prime rate during the period of injury. It did not abuse its discretion in awarding pre-judgment interest.

The judgment of the district court is AFFIRMED.